IN RE THE STATE HOUSE COMMISSION AND STATE AUDITOR.

Pub. Laws R. I. cap. 1201, § 9, of May 24, 1893, and cap. 1322, § 4, of June 12, 1894, and Pub. Stat, R. I. cap. 32, § 10, do not confer a joint authority upon the Board of State House Commissioners and the State Auditor to audit the bills referred to in Pub. Laws, cap. 1201, § 9, and cap. 1322, § 4.

It is not the duty of the State Auditor, under Pub. Laws R. I. cap. 1201 and cap. 1322 to draw orders upon the General Treasurer for the payment of the bills referred to in those statutes unless the bills presented to the Auditor and audited by the Commissioners or their duly authorized committee are itemized bills of the parties with whom they were contracted, except in the case of small incidental expenses incurred by the Commissioners for which vouchers are not ordinarily taken.

When itemized bills of the parties with whom they were contracted which have been audited by the Commissioners or their committee are presented to the State Auditor it is his duty to pay them unless he has reason to believe that their allowance was procured by mistake, fraud or other undue means.

In reply to a communication from the Governor to the Supreme Court the following opinion was given October 8, 1895.

*To His Excellency Charles Warren Lippitt, Governor of the State of Rhode Island and Providence Plantations:*

We have received Your Excellency's communication requesting our opinion on the points set forth in a communication to you from the State Auditor, enclosed for our consideration.

The questions at issue turn upon the construction to be given to the following language, contained in Pub. Laws R. I. cap. 1201, § 9 :  "The amount received from the sale of such scrip, less any premium received over and above the principal thereof as provided in section 8, or so much thereof as may be necessary, is hereby appropriated for the payment of bills audited by said Board, or by a committee thereof duly authorized for that purpose, and the State Auditor is hereby authorized and directed to draw his order upon the General Treasurer for the payment of all such bills out of the amount so received," and upon the construction to be given to similar language contained in Pub. Laws R. I. cap. 1322, § 4,[1] as follows :—"All moneys received by said Board by virtue of the provisions of this act, are hereby appropriated for the payment of bills, audited by said Board or by a committee thereof, duly constitued for that purpose, and the State Auditor shall draw his order upon the General Treasurer for the payment of such bills out of the moneys so received."

The communication from the Auditor states that it is contended by the Board of State House Commissioners that he has no authority except to see that the names of the approving officers of the Board are upon the bills presented for payment, and that it has been the practice of the Commissioners to send in for payment bills of their Secretary for sundry expenses paid to others, without specifying fully what the expenses were and without submitting vouchers for their payment.  The Auditor alleges that such a practice is contrary to the usages of the Auditor's office, and that, if it is permitted and persisted in, it will prevent his rendering an itemized report of the expenditures of the State to the General

---

[1] Passed June 12, 1894.

Assembly. He maintains that the word "bills" used in the statutes in question, for the payment of which he is directed to draw his orders on the General Treasurer, refers to the original bills of the parties with whom they are contracted, and not to the bill of a second person who claims to have paid the original contractor and presents a demand not accompanied by the bill of the original party as a voucher.

The Auditor refers to Pub. Stat. R. I. cap. 32, § 10, which provides that whenever the General Assembly shall make any appropriation for the erection or repair of any public building, &c., the Auditor shall require satisfactory proof that the work specified has been faithfully performed according to the terms of such appropriation, before the money appropriated shall be drawn, &c., and maintains that it is within the province and authority of the State Auditor to inquire into the several items of expenditure, in order that he may determine whether or not they are provided for by the act, and that a joint authority is conferred upon the Board and the Auditor by the provisions of the statutes in question.

As the statutes relate to the auditing and payment of bills, and as an intelligent examination and allowance of such bills require a detailed statement of the several items and charges which go to make them up, we are of the opinion that the word "bills" in these statutes is used in its primary signification of an account for goods sold, services rendered or work done, with the prices or charges annexed, though it is doubtless applied often in public speech to the statement of a claim in gross as well as by items. Moreover, unless the word be construed to require a statement of items, the Auditor, as he suggests, cannot render an itemized report to the General Assembly of the expenditures incurred, and the people will have no means of ascertaining for what the moneys have been expended. We do not think that the Legislature intended such a result when it conferred on the Commissioners, or their duly constituted committee, authority to audit bills.

We are of the opinion, also, that these statutes contemplate

the presentation of the bills of the orignal parties with whom they were contracted as the bills to be audited, except in case of small and comparatively unimportant incidental expenses incurred by the Commissioners, as, for instance, postage, telegrams, expressage and the like, for which vouchers would not ordinarily be taken.   Such incidental expenses may properly be embraced in an account by the person paying them, and be audited without the production of vouchers.

Unless, then, the bills presented to the Auditor as audited by the Commissioners or their duly constituted committee are itemized bills of the parties with whom they were contracted, or are accounts for incidental expenses of the character specified, we do not think that the statutes in question impose upon the Auditor the duty of drawing his order upon the General Treasurer for their payment.

We do not think that the statutes in question are to be construed as conferring a joint authority upon the Commissioners and the Auditor.   Chapters 1201 and 1322 are special statutes.   In the matters to which they relate they exclude the operation of Pub. Stat. cap. 32, § 10.   When a bill is presented to the Auditor in the form contemplated by the statute, and which has been audited by the Commissioners or their duly constituted committee, he has no discretion. It is his duty to pay it unless indeed, he should have reason to believe that its allowance was procured by mistake, fraud or other undue means.

> CHARLES MATTESON,
> JOHN H. STINESS,
> P. E. TILLINGHAST,
> GEORGE A. WILBUR,
> HORATIO ROGERS,
> WM. W. DOUGLAS.