UNITED STATES v. CERTAIN LANDS IN TOWN OF NARRAGANSETT.

(Circuit Court, D. Rhode Island.   July 8, 1910.)

No. 2,807.

EMINENT DOMAIN (§ 124*)—DAMAGES—TIME OF ASSESSMENT—ENHANCEMENT OF VALUE BY IMPROVEMENT.

Where the government, before instituting condemnation proceedings by the filing of a petition, had practically completed the end of a breakwater adjoining claimant's property, thus creating, under the shelter of the breakwater, a wharf site, which was taken away by the subsequent condemning of part of the upland adjacent to the alleged wharf site, the rule that damages are to be assessed as of the date of condemnation did not apply, so as to entitle the owner of the upland to damages as of the date of condemnation, and as enhanced by the wharf site created by the work; it being certain from the beginning of the work that the upland would be condemned, and the alleged wharf site not being available as such without the approval of the Secretary of War, which could not reasonably be expected in view of the location of the government improvements.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 332–344;  Dec. Dig. § 124.*]

Condemnation proceedings by the United States against certain lands in the Town of Narragansett. On motion to confirm the commissioners' report for assessment of damages. Motion granted.

Chas. A. Wilson, for United States.
Tillinghast & Collins, for defendant.

BROWN, District Judge. After a consideration of the commissioners' report, of the claimant's exceptions thereto, and of the arguments thereon, I am of the opinion that the award to the claimant is

---

liberal, and that no substantial reason appears to justify a modification of the commissioners' findings.

Before instituting condemnation proceedings by the filing of a petition in court, the government had practically completed the end of the breakwater adjoining claimant's property. The claimant contends that there was thus created under the immediate shelter of the breakwater a very valuable wharf site, and that by subsequently condemning a part of the upland immediately adjacent to the breakwater the government has taken away the wharf site which it had previously created, in enhancement of the value of claimant's lands. In other words, that the United States should pay the claimant for taking away from her the wharf site which was created by extending the breakwater to the land.

It is true that according to the general rule damages are to be assessed as of the date of condemnation. This rule has been so applied as to compel the state, in the exercise of the power of eminent domain, to pay for values created by the public improvement itself. This was illustrated in the building of the Rhode Island Statehouse. After purchasing a portion of the land, the state proceeded to condemn the adjacent lands, and was compelled to pay a price for these adjacent lands enhanced by the fact that it had, by embarking upon the building of a State Capitol and purchasing lands therefor, increased the value of all lands in the vicinity. In re State House Commission, 19 R. I. 390, 35 Atl. 212; Stafford v. City of Providence, 10 R. I. 567, 14 Am. Rep. 710.

While such a rule is probably sound where the condemnation of adjacent lands is for the purpose of enlarging an old and fixed location, the rule seems of more doubtful justice in cases where, from the nature of the work, it is evident, from the moment of the passage of the legislation authorizing it, that the land in question will necessarily be required for the public improvement. Where, from the inception of the public improvement, it is known with practical certainty that the land will be required for the public project, this in itself negatives any supposed advantages which might accrue to the land held in private ownership by reason of its adjacency to the grounds of a public Capitol, park, or like improvement. If from the outset it is known that the lands must be taken for the public purpose, it is unsound to base their valuation upon any supposed advantages arising from their continuance in private hands as lands adjacent to public grounds.

The application of the rule that the date for the valuation is the date of legal condemnation, rather than the date upon which by legislative act or by practical and necessary inference from such act it became known that the lands would be required for public purposes, is a matter that seems to me to require some further and careful consideration.

The enhancement of price due to the public improvement, if based upon the reasonable expectation that the lands may be held by the private owner with the added advantages of adjacency to the lands improved by the public, is legitimate; but when this expectation is destroyed by the practical certainty, as distinguished from legal certainty,

that the lands are not to continue in private ownership adjacent to improved public lands, then the reason fails. It is unsound to look merely at the date of filing a petition for condemnation in considering how far the value has been enhanced by the public project.

In view of the fact that by the application of this rule the public has been compelled to pay private owners of lands an advanced value due to the very improvement which the public has undertaken, it would be wise, upon the institution of public works requiring the exercise of eminent domain, that officers of government, national, state, or municipal, should have some of the prevision shown by Jeremy Bentham, when, among other interesting occupations, he framed a project for a canal across the Isthmus of Panama, and in pursuance of his habit of foresight made provision that, in awarding compensation for lands taken, no compensation should be awarded for values created by the improvement itself.

Assuming, however, that it is proper to apply in the present case the rule that damages must be assessed as of the date of condemnation, the present case is quite different from the cases which we have cited. The right to wharf out in front of the claimant's land was not absolute, but was conditional upon the recommendation of plans by the Chief of Engineers and their authorization by the Secretary of War. See Act March 3, 1899, c. 425, § 10, 30 Stat. 1151 (U. S. Comp. St. 1901, p. 3541).

The opinion of this court in the present case on demurrer to the claimant's answer considers the legislation relative to this condemnation proceeding. 145 Fed. 654.

The purpose of Congress in extending the breakwater to the shore was to provide a shelter and a landing place for the passengers, crews, and cargoes of vessels in distress, and other vessels, and for the lifeboats of the Point Judith Life-Saving Service. The general improvement at Point Judith was for the creation of a harbor of refuge. See Act March 3, 1905, c. 1482, 33 Stat. pt. 1, p. 1119.

The amended petition for condemnation in the present case was filed on March 8, 1906. After the passage of an act so clearly defining the purpose of Congress, no owner or purchaser of the upland in this vicinity could reasonably expect the approval of the Secretary of War for the erection of a wharf by private parties in the most sheltered location immediately adjacent to the breakwater. A value based upon such expectation is entirely too conjectural, under the circumstances.

The purpose of Congress in its large expenditures upon this breakwater, the creation of a harbor of refuge for small craft and live-saving boats, as well as for larger vessels, seems inconsistent with any reasonable expectation that an owner of the upland was to be permitted to appropriate for himself the choicest location in a harbor of refuge created at the expense of the people. It is true that under other circumstances the condition precedent, that the approval of the engineers and the authorization of the Secretary of War must be procured, might not prevent a valuation based upon a reasonable expectation that such authority might be procured and that a wharf might be

erected. In such a case a wharf site might have special value, even though governmental authority were necessary before the wharf could be erected; but that, in the present case, any one should expect that the Secretary of War would grant to private owners what the claimant says is the best protected part of the harbor of refuge, and which obviously is a suitable anchorage ground for small craft, for the erection of a private wharf, is an expectation of such unsubstantial character that it could not fairly be taken into consideration as a basis for holding that this claimant has suffered substantial damages by being deprived of a wharf site beside the breakwater.

The legislation which accompanied the building of this important national work was sufficient to apprise any owner or intending purchaser of the upland that it was primarily undertaken in the interests of the people of the United States, and not for the enhancement of the values of private property.

While the petition for condemnation was filed after the work was substantially completed, the proceedings from the passage of the act to the decree of condemnation were so continuous as to render it practically certain that the Secretary of War would not have granted permission to build a private wharf in front of lands which the government would need for carrying out its project. That intelligent officials, for the sole advantage of a private owner, would voluntarily grant him a valuable privilege, knowing that subsequently they must condemn and compensate him for it at the expense of the public, is not to be supposed.

For the above reasons, as well as for the reasons set forth therein, the commissioners' report should be confirmed. A draft decree confirming the commissioners' report may be presented accordingly.