CITY OF FT. WORTH v. CHARBONNEAU
et ux.  (No. 7855.)

(Court of Civil Appeals of Texas. Ft. Worth.
Feb. 14, 1914. Rehearing Denied
March, 1914.)

1. EMINENT DOMAIN (§ 202*)—EVIDENCE AS TO COMPENSATION.

In condemnation proceedings, where, upon the issue of damages, the owner had testified as to the quality and character of the land condemned, and given his opinion of its value, the jury could properly consider the fact of plaintiff's long residence upon the land as bearing upon the weight of the testimony.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 541; Dec. Dig. § 202.*]

2. EMINENT DOMAIN (§ 202*) — EVIDENCE AS TO COMPENSATION.

In condemnation proceedings, upon the issue of the value and character of the property condemned, the jury could properly consider the fact that the owner had raised his family upon the land as showing its adaptability to homestead uses.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 541; Dec. Dig. § 202.*]

3. EVIDENCE (§ 142*)—VALUE OF LAND—SALES OF OTHER LANDS.

While it is permissible, on the issue of the value of lands sought to be condemned, to show sales of similar lands in the vicinity at about the time of the condemnation, the court properly rejected testimony of a witness that he had sold 139 acres for $40 per acre, where no similarity of condition was shown.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 416–423; Dec. Dig. § 142.*]

4. EVIDENCE (§ 142*)—VALUE OF PROPERTY—SALE OF OTHER LAND.

Upon the issue of the value of lands in condemnation proceedings, the court properly permitted a witness to testify as to the gross receipts from tracts of land, which, though located at different points, were similar to the land in controversy.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 416–423; Dec. Dig. § 142.*]

5. APPEAL AND ERROR (§ 978*)—REVIEW—DISCRETION OF LOWER COURT — NEW TRIAL — MISCONDUCT OF JURY.

Since Rev. St. 1911, art. 2021, providing that, where the ground of motion is misconduct of the jury, etc., the court shall hear evidence thereof, and may examine the jurors, etc., and if the misconduct, etc., be material, a new trial may, in the discretion of the court, be granted, changes the common-law rule, the appellate court will not disturb the discretion of the trial court in denying a new trial asked on that ground, unless there was clearly an abuse of discretion.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3866–3870; Dec. Dig. § 978.*]

6. NEW TRIAL (§ 102*) — GROUNDS — NEWLY DISCOVERED EVIDENCE.

The trial court, in condemnation proceedings, properly refused to grant a new trial on the ground of newly discovered evidence; no legal excuse being presented why such evidence was not offered at the trial.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 207, 210–214; Dec. Dig. § 102.*]

Appeal from Tarrant County Court; Chas. T. Prewett, Judge.

Condemnation proceedings by the City of Ft. Worth against William Charbonneau and wife. From a judgment fixing the value of the property, plaintiff appeals. Affirmed.

McCart, Bowlin, Terrell & McCart and A. B. Curtis, all of Ft. Worth, for appellant. Bell & Milam and Flournoy, Smith & Storer, all of Ft. Worth, for appellees.

CONNER, C. J. This was a condemnation proceeding instituted in the county court by the city of Ft. Worth against William Charbonneau and his wife to condemn 298 acres of land described in the plaintiff's petition for the purpose of establishing thereon a water reservoir. The land sought to be condemned was situated in the valley of the West fork of the Trinity river near the city of Ft. Worth, and constituted a part of a tract of about 1,100 acres upon which the defendant and his wife had resided as a home for many years. Upon the trial the jury returned a verdict in favor of the defendants for $22,686 as the value of the land actually appropriated by the city, and the further sum of $3,000 as the damage to the remainder of the defendants' tract.

[1, 2] The fifth ground of appellant's motion for a new trial, which is presented as appellant's first assignment of error, complains of the action of the court in refusing the following instruction, viz.: "You are further instructed that, in estimating damages to the plaintiff by reason of the property's being taken and by reason of the damages, if any, to the remaining property, you will not consider, for any purpose, the fact that plaintiff has lived upon the property a long time, that the same is his home, or that he has raised his family upon said property." Appellant's contention is that it was entitled to this charge so as to exclude from the consideration of the jury, in assessing damages, any sentimental value of the lands involved in the controversy. In the court's charge on the subject, no sentimental value was authorized, and we think the special charge requested was properly refused on the ground, if for no other reason, that it required the jury to wholly disregard the fact that plaintiff had lived upon the property a long time and that the same was his home. A relevant inquiry, to which evidence pro and con was directed, went to the value and character of the land sought to be condemned. The defendant Charbonneau testified that it was bottom land; that it was susceptible to irrigation; that he uniformly raised good crops thereon; that in many years there had been but two overflows thereof; and gave his opin-

ion of its value. He further testified that his other land was principally adapted to grazing to which it was applied, etc.; and, as bearing upon the weight of his testimony in these particulars, we think the jury could properly consider the fact of the plaintiff's long residence, and his consequent familiarity with the subjects about which he testified. Even the fact that the defendant had raised his family upon the property tended to show the adaptability to homestead uses. But if immaterial, and as such should have been excluded, the charge required the exclusion of other facts recited, which we think were admissible and proper for the jury's consideration.

Appellant's twenty-eighth ·ground of the motion for new trial, also presented in its first assignment of error, complains of the defendant Charbonneau's testimony to the effect that the lands in controversy had been for about 30 years his home, and · that he reared his family there and did not wish to part with it. This is also complained of · as admitting the consideration of a sentimental value. We, however, conclude that nothing prejudicial has been pointed out in these respects. The objection to the evidence was to the whole, and, as we have pointed out, we think it was relevant for the defendants to show their long-continued residence and the adaptability of the land to homestead uses; and the court specifically instructed the jury that they should disregard his statement that he did not wish to part with it. Moreover, the very nature of the suit is such as to show that it was not a voluntary severance of his homestead. We see nothing in the charge, the evidence, or the argument, in relation to these matters, that justifies the conclusion that the jury in fact attached any sentimental value to the land in controversy.

[3] Objection was made to the exclusion of the evidence of J. F. Cook to the effect that he had sold a tract of land, about 139 acres, for cash, about the time of the institution of this suit, for the sum of $40 per acre. While it is held that it is permissible on the issue of the value of lands sought to be condemned to show sales of similar lands in the vicinity at and about the time of condemnation, no such similarity was shown in the present instance as to make the rejection of Cook's testimony reversible error. The witness was permitted to give his opinion of the value of the Charbonneau land, and, in the testimony offered and rejected, it appeared that, of the 139 acres so sold by Cook, but 40 to 50 acres was bottom land, and that the rest was broken. It further appears that the tract was sold as a whole and located some three miles down the river from the Charbonneau land. It was not made to appear whether the bottom land was susceptible of irrigation, or whether it was in cultivation, or even susceptible of cultivation. So that, as stated, ·we cannot say that the court com-

mitted reversible error in the rejection of the testimony. Newbold v. I. & G. N. Ry. Co., 34 Tex. Civ. App. 525, 78 S. W. 1079; Dennis v. Dallas, etc., Ry. Co., 94 S. W. 1092; Ft. W. Improvement Dist. v. Weatherred, 149 S. W. 550; Chaney v. Coleman, 77 Tex. 103, 13 S. W. 850.

What we have said in disposing of the testimony of the witness Cook applies as well to the testimony of E. S. Hill and others, which we need not, therefore, particularly discuss.

[4] Appellant's fourth assignment is as follows: "The court erred in allowing the witnesses Seyster and Germany to testify, over plaintiff's objection, as to the gross receipts from small tracts of truck land located many miles from the land in controversy, and ·not similarly situated; said witnesses not having testified as to the net receipts, and the same being an incorrect measure of damages." The witness Seyster testified that he had examined the Charbonneau land sought to be condemned, and that it could be irrigated by pumping water from the river; that he had had experience with lands irrigated in the same manner from the Trinity river; that he was at the time cultivating land near Randall's mill, located in the Trinity river bottoms some eight or ten miles below the land in controversy, upon which he had raised last year 200 bushels of potatoes per acre, and also $105 worth of beans on one acre. The witness Germany testified that he owned some bottom land on the West fork of the Trinity river several miles west of Ft. Worth; that he irrigated four acres by pumping water out of the river and made on it $250 per acre· gross; that he made about $500 per acre on pepper, $200 per acre on cucumbers and beans, $300 per acre on onions—these prices being realized on the Ft. Worth. market. He was not able to state his exact expenses, but testified that the net profit was about one-half the gross income. We think this evidence was admissible. It tended to show the uses to which the Charbonneau land could be put, and was relevant on the issue of its value, irrespective of the costs of crop production. While located at different points, the land mentioned by the witnesses was shown to be similar to the Charbonneau land and, like the Charbonneau land, susceptible of irrigation, and we see no reason why the jury, in determining the value of the Charbonneau land, might not reasonably consider, among other things, its agricultural possibilities.

[5] In the fifth assignment complaint is made of alleged misconduct on the part of the jury, but we are not inclined to attach much importance to this, and for that reason will not set out in detail the long statement following the assignment. In substance we think it amounts to no more than mere argument on the part of the jurors relating to evidence actually before them, such a Charbonneau's having lived on the place a long

time and that it was his home; that, with the bottom land segregated from the rest, he would be deprived of timber, of which, in part, the bottom land was covered; that the natural gas might some time become exhausted, etc.    Some of the statements were denied, and we feel no disposition to disturb the discretion exercised by the trial court in overruling the motion for a new trial on this ground.  Article 2021 of the Revised Statutes provides that: "Where the ground of the motion is misconduct of the jury or of the officer in charge of same, or because of any communication made to the jury, or because the jury received other testimony, the court shall hear evidence thereof; and it shall be competent to prove such facts by the jurors or others, by examination in open court; and, if the misconduct proven, or the testimony received, or the communication made be material, a new trial may, in the discretion of the court, be granted."

Prior to the act of 1905 (Acts 1905, c. 18), of which the article of the statute referred to is a part, such grounds of relief were not available.    For manifest reasons our Supreme Court adopted the broad rule that jurors should not in civil cases be allowed to attack their verdict by testifying to misconduct, irregularities, or impropriety on the part of themselves and their fellows occurring in the privacy of their deliberations, and this was said to be in accordance with the great weight of authority.  See St. L. S. W. Ry. Co. v. Ricketts, 96 Tex. 68, 70 S. W. 315.  While the old rule was evidently regarded by our Legislature as too rigid, the reasons therefor would seem still to exist, and the Legislature, in enlarging the rule, has distinctly committed it to the "discretion" of the trial court who hears the matter.  We therefore think that, to constitute a ground for reversal, it should be made plainly to appear that the misconduct of the jury was not only material, but such as to show an abuse of the trial court's discretion in declining to grant a new trial on such ground.    See Whitaker v. Browning, 155 S. W. 1197; Foley v. Northrup, 47 Tex. Civ. App. 277, 105 S. W. 231; M., K. & T. Ry. Co. v. Blalack, 128 S. W. 708; City of Ft. Worth v. Lopp, 134 S. W. 825; Kalteyer v. Mitchell, 102 Tex. 390, 117 S. W. 792, 132 Am. St. Rep. 889; H. & T. C. Ry. Co. v. Gray, 137 S. W. 731; M., K. & T. Ry. Co. v. Brown, 140 S. W. 1172.

[6] After the trial court had overruled appellant's original motion for a new trial, it filed a supplemental motion to the effect that, as shown by the opinion of a resident engineer in charge of the construction of the reservoir, the reservoir would fill up with sediment or silt in the course of 30 or 35 years, after which the reservoir would have to be abandoned.    The contention is that, this being true, the land would revert to Charbonneau, and that it would be manifestly unjust to

now allow Charbonneau the full value of the land, as was evidently done by the verdict of the jury.

Chapter 11, § 3, p. 53, of the charter of the city of Ft. Worth, gives the city power "to condemn property in any court of competent jurisdiction whenever deemed expedient within or without the limits of the city upon compensation duly paid, for any public or municipal use or purpose, and shall be governed in such proceeding by the general laws of the state relative to condemnations."    Articles 1003, 1005, 6518, and 6519 of the Revised Statutes provide the method or procedure under the state laws.  Article 6519 specially provides that, when "the whole of a person's real estate is condemned, the damages to which he shall be entitled, shall be the market value thereof in the market in which the same is located"; and this was the measure of damages authorized by the court's charge for defendants' land actually taken, to which, on this subject, no exception has been made. The engineer's statement is to the effect that: "In the course of years such silt will fill or nearly fill the storage capacity of the reservoir.  *   *   *   Although purely a matter of opinion, I am inclined to the belief that 30 or 40 years is the probable length to the life of the West fork reservoir for a water supply for the city of Ft. Worth."  To now reverse the judgment and award a new trial upon any such assumption would, it seems to us, be contrary to the statute and manifestly unjust to the defendants.  Moreover, if in any event it could be said that evidence of the character indicated in the affidavit of the engineer was relevant on the issue of damages, no legal excuse whatever is presented why such evidence was not secured and offered in due course of the trial.    While the verdict and judgment seem large, it is not complained of as excessive, nor indeed could it well be.. The evidence of the value of the land actually taken varied from $30 to $300 per acre.  The verdict shows that the jury allowed $75. There was ample evidence also that the damages done to the defendants' remaining tract was in excess of the $3,000 allowed by the jury.   So that, on the whole, it cannot be said that the verdict and judgment is not amply supported.    No reversible error having been pointed out, we conclude that the judgment should be affirmed.

Affirmed.