CITY OF DALLAS v. SHACKELFORD et al.

No. 13742.

Court of Civil Appeals of Texas. Dallas.

Nov. 15, 1946.

Rehearing Denied March 28, 1947.

H. P. Kucera, City Atty., and A. J. Thuss, Jr., Asst. City Atty., both of Dallas, for appellant.

Emil Corenbleth and Sam Passman, both of Dallas, for appellees.

LOONEY, Justice.

This is a condemnation proceedings in which the City of Dallas is seeking to condemn the whole of a parcel of land (four adjacent lots) owned by C. M. Shackelford, to be used in connection with other property for the extension and maintenance of a municipal public market. The record discloses that the prescribed statutory procedure was pursued; that the owner, being dissatisfied with the amount of damages awarded by the Commissioners, appealed to the County Court at Law, No. 1, Dallas County. C. M. Shackelford having died during the pendency of the case in County Court, his widow, Mrs. Maude Shackelford, individually and as independent executrix of the will of her husband, also a daughter, Frances Shackelford Renfro, joined by her husband, V. Renfro (owners of the land after death of Mr. Shackelford), were made parties and prosecuted the appeal. The Mercantile National Bank of Dallas was permitted to intervene and set up an indebtedness and lien against the property. Abraham Rutchik, although

mentioned in the preliminary proceedings as owner, or at least joint owner with Shackelford of the property, made no claim to any interest in same. The court submitted the case to the jury on only one issue, that is, asked the jury to find from a preponderance of the evidence the reasonable market value of the property on January 4, 1945, the date it is conceded the property was taken.

The city excepted to the charge on the ground that it permitted recovery of any increase in value of the land attributable to the mere location of the market in the area which included appellees' property; it being contended that on, or about, December 10, 1941, the City of Dallas adopted a resolution to the effect that it would be necessary to take the property in question for the establishment and extension of the public market in contemplation. In this connection, appellant city requested the court in writing to instruct the jury as follows: "Since the property under condemnation is a part of the original designated market site, you are instructed that in your answer to special issue No. 1, you shall not take into consideration any increase in market value, if any, which may have accrued to defendants' land due to the location of the public market on such designated site." (pp. 30, 31 tr.)

The court overruled appellant's exception to the charge and refused the requested instruction, to which appellant excepted. In answer to the issue submitted, the jury found that the reasonable market value of the land in question, on or about January 4, 1945, was $15,500. Based upon this verdict, the court rendered judgment in favor of appellees for the sum of $15,500; vested title to the property involved in appellant, and properly disposed of the interest of the Mercantile National Bank set up in its plea of intervention. The city excepted to the judgment, gave notice of and perfected this appeal. The questions hereinafter discussed are properly before us for adjudication.

Appellant urges three points, 1, 2 and 3, all based upon the alleged error of the court in overruling appellant's exception to the charge as given and in refusing its requested instruction. These points are grouped in appellant's brief; based thereon, contends that in determining the market value of the property in question as of the date of the deposit by condemnor (January 4, 1945), there should have been excluded from the market value, as of that date, any increase or enhancement brought to the property by reason of condemnor's declaration as to the desirability and necessity of appropriating the property in the area designated for the establishment and extension of the public market (in which was included the property involved); insisting that the owners are adequately and legally compensated by the market value as it would have existed, unaffected by the resolution adopted declaring the public necessity of taking the property within the area designated and the subsequent acquisition of a part of the property and the location of a market shed thereon (all of which will later appear in the facts).

Appellant cites quite an array of Federal and State cases where the rule for measuring the owner's damages as contended by appellant, was applied; among others, calls attention to a lengthy annotation found in 147 A.L.R. p. 66 et seq. At page 68 of this annotation, it is stated that "Without at this point attempting to explain or reconcile the conflicting results reached in the numerous cases considering the question, it may here be stated that the great weight of authority, as shown by the results actually reached in the following cases, denies to the owner the right to recover an increase or enhancement, due to the proposed improvement, in the value of the land taken." This is followed by a lengthy citation of State and Federal cases. However, at page 70, under the heading of "Recovery Allowed", the annotator states that "In a comparatively small group of cases the right to recover for the enhanced value of land taken is accorded to the owner without qualification or condition. * * *." Under the above heading, two Texas cases are cited. Allen v. Missouri K. & T. R. Co., Tex.Civ.App., 1894, 25 S. W. 826; and Panhandle & G. R. Co. v. Kirby, 42 Tex.Civ.App. 340, 94 S.W. 173. These cases, in our opinion, are not out of line with the general rule, because the facts

involved did not call for its application. We do not think any Texas cases can be found that refused to apply the general rule where the facts warranted its application. In the Allen case mentioned, the railway company sought to condemn the whole of a block of land in the City of Houston for depot purposes. At the time of the condemnation the railroad had not reached the city, although its route had been designated; but the evidence fails to show that, prior to the condemnation proceedings, the railroad had designated any location for a depot site; hence, the block of land in question, in common with other adjacent lands, had already been enhanced somewhat in value by reason of the designation of the route. The other case mentioned is equally irrelevant.

■ The circumstances under which the owner is denied the right to recover the increase or enhancement in value of his land sought to be condemned, due to proposed public improvement, are revealed by the following excerpts from adjudicated cases. In United States v. Certain Lands in Town of Narragansett, C. C., 180 F. 260, 261 (cited and highly commended by the appellant), among other things the court said: "* * * where, from the nature of the work, it is evident, from the moment of the passage of the legislation authorizing it (in the instant case, the passage of the resolution by the City Council), that the land in question will necessarily be required for the public improvement. Where, from the inception of the public improvement, it is known with practical certainty that the land will be required for the public project, this in itself negatives any supposed advantages which might accrue to the land held in private ownership by reason of its adjacency to the grounds of a public Capitol, park, or like improvement. If from the outset it is known that the lands must be taken for the public purpose, it is unsound to base their valuation upon any supposed advantages arising from their continuance in private hands as lands adjacent to public grounds."

The leading Texas case on this subject is City of El Paso v. Coffin, 40 Tex.Civ.App. 54, 88 S.W. 502, 505, opinion by Chief Justice James (Fourth District), application for writ dismissed. The city sought to condemn, for public park purposes, several lots belonging to appellee, adjacent to the passenger depot properties of certain railway companies. Although the decision of the particular case did not turn on the application of the rule, yet the court took occasion to state circumstances under which the rule under consideration would be applicable, as follows: "* * * It is held generally, in cases presenting the appropriate facts, that, where a person's entire property is included in one general proceeding of condemnation for a particular purpose, it is not permissible to consider that purpose, or the results thereof, in estimating the owner's compensation. The reasons for this rule are apparent. To permit it would be to take into consideration the condemnation proceeding itself as a factor, which is not allowed. Further, it is evident in such a case that the taking, and the effect on the value from such taking, would be concurrent, and such increase would not exist when the taking occurs. The person's property is taken and is absorbed in the purpose for which it is taken, and to allow him a compensation based on the value which the property would have had if not taken would be giving it a status it could not possibly have had in the very nature of the act. The reasoning of the Supreme Judicial Court of Massachusetts is appropriate here (though not its decision, as that was controlled by a statute): 'Its real value for use is not increased until the change in its surroundings comes. If the expected improvement involves the taking of the land by the right of eminent domain, the value of the land taken will never be enhanced by the improvement, for the taking precludes the probability of ever using it under improved conditions.' May v. City of Boston, [158 Mass. 21], 32 N.E. 902. Such, we think, would be the case here if this property and the other property acquired as a depot site were being condemned by the railway companies simultaneously in a common proceeding. But the property is not being condemned by the railway companies, nor is it being condemned for its purposes. * * *" We think the difference in the

decisions is more apparent than real, due to the different facts and circumstances under which condemnation proceedings were had; also to the liberal construction of the general rule by some courts, while others construe it strictly.

We now reach the question whether under the facts of this case appellees should be deprived of the increase in the value of their property, by reason of the public improvement, that accrued prior to its being taken by the city. The facts are these: On December 10, 1941 the city council of the City of Dallas adopted a resolution; its preamble stated the purpose and intent substantially as follows: That on June 28, 1941, the qualified voters of the city authorized the issuance and sale of tax supported bonds for the purpose of acquiring lands on which to erect and establish a public municipal market, "and, Whereas, due to the declaration of war against Japan and the general unsettled conditions, it does not presently appear advisable or advantageous to embark upon the full realization of that public improvement; and, Whereas, after consideration of many proposed sites by the City Council it now appears that the most suitable and advantageously located site for the erection of this market is in the territory bounded by"—here is set out field notes of a certain area in the city embracing about ten city blocks of varying sizes, including the block in which appellees' lots are located. The preamble proceeds: "and, Whereas, it appears that presently the property that should be acquired, and within the immediate future, is embraced in"—here is mentioned a number of blocks, not including the block in which appellees' property is located. Then follows the resolution, as above mentioned. Section 2 mentioned the blocks to be immediately acquired, not including the land in question; section 5 directed that appropriate steps be taken, by proper officials of the city for the acquisition of the property,—first, through voluntary negotiation between the parties, and, if such steps are not successful, that appropriate proceedings be instituted to condemn the property in the exercise of the power of eminent domain, etc. (S.F. 171–174).

After adopting the resolution of December 10, 1941, designating the lands to be immediately taken, city officials began its acquisition; among others, acquired title to block 14/145, referred to in the testimony as the "Donaldson Block", upon which the city erected a market shed for use by farmers and truckers hauling fresh vegetables and fruits to market for sale; but it is not disclosed whether or not all the property designated to be immediately taken was, in fact, acquired by the city.

After these events, and after the shed had been erected and was in use, it seems that for the first time city officials decided to acquire the property in question. This, we think, is shown by the resolution which begins with the following caption: "A Resolution Determining Upon the Necessity of Acquiring the Hereinafter Described Land to Be Used in Connection With Constructing a Municipal Public Market." The resolution proceeds: "Section 1. That it is hereby determined that public necessity requires the construction of a municipal public market, and that the City of Dallas should acquire the land necessary for this project. Section 2. That the hereinafter described property owned by the hereinafter named parties is hereby determined to be necessary for the construction of a public municipal market." The property is described as "All of lots 4, 5, 6 and 7, Block 4/156, official City numbers, same being a tract of land facing 90 feet on Preston Street and 100 feet on St. Louis Street, with improvements consisting of six two-room houses and two three-room houses." The resolution authorized the Director of Public Works and Right-of-way Engineer to offer the owners $8,500 for the property; the owners named being Abraham Rutchik and wife Libby Rutchik. This resolution appears in the Statement of Facts (pp. 174–176); is not dated, but, as disclosed by the record, was adopted in the latter part of October or about the first of November 1944.

The city officials named made the offer as directed to Mr. Rutchik; were informed by him that the land was under contract to C. M. Shackelford, to whom the offer was also made but without avail, as the offer was rejected by both Rutchik and

Shackelford. Thereupon, the city council adopted a resolution ordering the condemnation and appropriation of the property; directed the City Attorney to file necessary proceedings to that end (S.F. pp. 176–178), which was done sometime during the month of November 1944. In due course, commissioners were appointed to assess the damages; the assessment and report thereof were made, to which Mr. Shackelford excepted and appealed to the County Court. The city afterward sought possession of the land and deposited the amount of damages assessed on January 4, 1945, which, in legal contemplation, was the date of taking. See San Antonio & A. P. Ry. Co. v. Ruby, 80 Tex. 172, 15 S.W. 1040.

Now, applying the legal tests announced by the courts to the facts, we do not think it can be correctly said that the resolution of December 10, 1941 necessarily and with particular certainty foreshadowed the taking of appellees' property for the public purpose mentioned; nor, as stated by Chief Justice James, was the property sought to be condemned simultaneously and in a common proceeding with the other lands specifically designated in the resolution for immediate acquisition. Although appellees' property was within the general ten-block-area designated in the resolution of December 10, 1941, for the location of a public market, yet it was not to be presently taken; nor did it then appear when, if ever, it would be taken for the public purpose. The resolution itself stated that, due to the declaration of war against Japan and the general unsettled conditions, it was not advisable to embark upon the full realization of the public improvement; hence, for these reasons, the city entered upon only a partial realization of the improvement.

At that time war with Japan was on; the general unsettled conditions mentioned indicated that this government might be drawn into the European war then in progress, which very soon became an actuality. When these wars would end, or the result thereof, or the economic conditions that would be left in their wake, were unknown and unpredictable. In the meantime, the city proceeded to acquire the property

designated for immediate acquisition, and built upon one block a market shed. These improvements, as the evidence showed, benefited and enhanced the value of appellees' property, as well as other properties similarly situated. The record discloses that the property under consideration was several times sold during this period, presumably at its enhanced value due to improvements already made. In a proper case under the facts condemnor should not have to pay the increased value of property taken, due to the public improvement itself; but, under the facts of the instant case, we do not think the owner should be deprived of the same benefits he would have enjoyed if the land had not been taken,—in view of the fact that there was no definite purpose manifested by the city to take it until in the fall of 1944. In addition to the other facts and circumstances, we think the resolution adopted as the first step towards taking this property, indicates as much. Its caption reads: "A Resolution Determining Upon the Necessity of Acquiring the Hereinafter Described Land to be Used in Connection With Constructing a Municipal Public Market." "Section 1. That it is hereby determined that public necessity requires the construction of a municipal public market, and that the City of Dallas should acquire the land necessary for this project. Section 2. That the hereinafter described property owned by the hereinafter named parties is hereby determined to be necessary for the construction of a public municipal market. * * *" (p. 174 S.F.)

■ If appellees' property had been designated in the resolution of December 10, 1941, for immediate acquisition, by purchase or condemnation, along with the other properties so designated for that purpose, doubtless the condemnation could be considered simultaneous and in a common proceeding; but such was not the case. When, in the fall of 1944, the city finally decided to acquire the property by purchase or condemnation, it had already been benefited and enhanced in value as the result of improvements made by the city as the result of an entirely separate and disas-

874

sociated proceedings. So we conclude that, in fixing the value of appellees' property as of the date it was taken,—January 4, 1945, it was entirely proper for the jury to take into consideration its enhanced value due to the previous steps taken by the city towards the establishment of a public municipal market. This conclusion, in our opinion, is supported by the following Texas cases: City of El Paso v. Coffin, supra; Gulf, C. & S. F. R. Co. v. Brugger, 24 Tex.Civ.App. 367, 59 S.W. 556; McChristy v. Hall County, Tex.Civ. App., 140 S.W.2d 576; and San Antonio etc. Ry. v. Ruby, supra.

In points Nos. 4 and 5, appellant complains of the action of the court in admitting, over its objection, the deed of Abraham Rutchik to C. M. Shackelford, conveying the property in question for the recited consideration of $15,000; the objection being that it was self-serving and not admissible to prove the market value of the land. If the court erred in admitting the deed, we think it was harmless, in view of the instruction given the jury in connection with its admission. Among other things the court said: "* * * that the consideration shown therein in the deed is not a proof of the market value of the property at that time or any other time, but is simply one of the elements that may be considered by you in arriving at your final conclusion. * * *" Besides, irrespective of this deed, several competent witnesses gave testimony from which the jury could have rendered a much larger verdict. The same question was raised, and by this court decided adversely to the contention of appellant, in Reeves v. City of Dallas, Tex.Civ.App., 195 S.W.2d 575–580, 581, in which application for writ of error was refused,—no reversible error, on October 2, 1946.

In points of error Nos. 6 and 7, appellant complains of the action of the trial court in permitting the witness E. H. Roberts to testify as an expert in regard to the reasonable rental value of the land in question, contending that the witness was not qualified to testify as an expert. The court held, under the facts, that the witness was qualified to testify as an ex-

pert. He testified that in his opinion the property was worth $250 per month for use as a restaurant. We think the evidence was sufficient to warrant the witness in giving his opinion as to the rental value of the property, that being one of the elements that could be considered, along with others, in arriving at the market value of the property. This, in our opinion, was also held in the case of Reeves v. City of Dallas, supra. Besides, there was ample evidence in the record, independent of the testimony of this witness, that would have authorized a much larger verdict. After carefully examining all points of error urged and failing to find reversible error, the judgment of the court below is affirmed.

Affirmed.

YOUNG, J., not participating.