**TEXAS ELECTRIC SERVICE COMPANY,**
Appellant,

v.

**Seth CAMPBELL, Appellee.**

No. 5331.

Court of Civil Appeals of Texas.

El Paso.

July 15, 1959.

Rehearing Denied Oct. 28, 1959.

John R. Lee, Kermit, Cantey, Hanger, Johnson, Scarborough & Gooch, Jack C. Wessler, Ft. Worth, for appellant.

George Finley, J. Albert Dickie, Kermit, for appellee.

LANGDON, Chief Justice.

This is a statutory condemnation proceeding brought by Texas Electric Service Company, an electric utility company, having the right of eminent domain, to condemn an easement for an electric transmission line over and across 21½ sections of land used for ranching and other purposes, located in Winkler County, together with the right of ingress and egress over appellee's adjoining lands.

The statement in condemnation was filed with the county judge, special commissioners were appointed, and award made in the amount of $4,680. Appellant paid the accrued costs, filed cost bond and deposited with the clerk of the county court double the amount of the commissioners' award and, thereupon, took possession of the easement and proceeded with the construction of its transmission line.

Appellant, Texas Electric Service Company, duly filed its appeal from the award of the commissioners, and, upon trial before the jury, after the close of the testimony, defendant Seth Campbell filed an admission that plaintiff was entitled to recover as prayed for in its petition, and that the sole remaining issue of fact in the cause was the amount of damages which should be awarded to defendant. Based on the jury's answers to special issues, judgment was entered awarding appellant its easement and awarding appellee damages in the sum of $10,155.74, which sum is made up of two items—$714.24 for the 50-foot-wide easement strip containing 14.88 acres of land, and $9,441.50 damages to 4,105 acres lying between the Odessa and Andrews highways. The jury found no damage to 9,760 acres north of Andrews Highway and south of the Odessa Highway, constituting the remainder of .defendant's lands. Motion for new trial was duly filed and, after hearing, overruled, to which order appellant excepted and gave notice of appeal. All prerequisites to appeal have been complied with, and this case is properly before us.

Appellant brings fourteen points of error, which have been divided by appellant into three groups for purposes of argument, and which will be considered and discussed by us in the same manner.

The record discloses that defendant-appellee, Seth Campbell, owned approximately 21½ sections of land in Winkler County, comprising approximately 13,880 acres of land which is physically divided by two highways—Highway 302 from Kermit to Odessa, and Highway 115 from Kermit to Andrews; that the area between the two highways, being the portion of defendant's lands actually crossed by the easement condemned, consisted of 4,105 acres of land exclusive of the 14.88 acres of land condemned; that the balance of the remainder of the ranch lying north of Highway 115 and south of Highway 302 consists of 9,760 acres of land. In answer to Special Issues Nos. 3 and 4, inquiring as to the value of the 4,105 acres before and after the taking, the jury found that this land depreciated in value $2.70 per acre immediately after the taking, but found there had been no depreciation in value in answering Special Issues Nos. 5 and 6, inquiring as to the value of the 9,760 acres of land lying north of the Andrews highway and south of the Odessa highway, before and after the taking.

We have carefully considered appellant's first six points of error under Group One, and are of the opinion that these assignments must be overruled. Appellant's position is based primarily upon the assumption that there was no competent evidence and no evidence to support the submission of Special Issues Nos. 3 and 4, the jury verdict thereon, and the resulting judgment; and also that the jury findings thereon were contrary to the overwhelming preponderance of the evidence and the verdict so excessive as to show that the jury was influenced by passion and prejudice against the plaintiff.

The evidence is undisputed that some damage was sustained by the adjoining land lying between the two highways and consisting of 4,105 acres of land exclusive of the 14.88 acres condemned. Only four witnesses testified as to the value of the lands, two for plaintiff (appellant), and two for defendant (appellee). All of the witnesses testified there had been some diminution in value of the adjoining land as a result of the taking of the easement. Appellant's witnesses, C. A. Cole, Jr., and C. C. Boles, testified as follows: Cole, that the adjoining land between the two highways had depreciated two cents per acre; and Boles, that such land had depreciated three cents per acre. Defendant's witnesses testified as follows: The witness F. E. Summers, that the remaining land between the two highways had a value of $312 before the taking, and $232.50 immediately after the easement was affixed, the diminution in value being $79.50 per acre; the witness John Moore testified that the same land had a value of $300 per acre before the taking and $285 after the taking, the diminution in value being $15 per acre.

Each of the witnesses on value was qualified as an expert. Defendant's witness F. E. Summers had lived in Winkler County for 26 years, was employed by the Kermit State Bank, and was the manager of the Basin Finance Company, had previously appraised the land in question and was familiar with it; in making his evaluation he considered that the property abutted on two highways, its proximity to the city of Kermit and the County Park, the expansion of the city of Kermit in the direction of this land, and the fact that it extended to within one-half mile of the city; that he considered the sales in the same general area for commercial and industrial sites; that the high-tension line rendered the land near the line less desirable for building sites, and that the easement depreciated the value of the land because of the superior rights of the easement owner. The defendant's other witness on value, Mr. John F. Moore, testified that he had lived in Winkler County for twenty years and was engaged in the insurance and real estate

business; that he was familiar with real estate values in Winkler County and with the value of the land in question, having made an appraisal of this land. He testified that the land could be used for residential and industrial purposes, and his testimony reflects that he considered substantially the same elements as were considered by the witness F. E. Summers, in arriving at the values found by him for the land in question before and after the easement was affixed.

The defendant, Seth Campbell, did not testify as to value. His testimony was confined, principally, to the nature and character of his lands, its uses and the effects of the easements on his lands. He testified that his property was close to an airport, and that it lay within one mile of the County courthouse; that his home was in a section which adjoined one of the sections crossed by the easement; that the land was used for ranching purposes and was improved with fences, cross-fences, windmills, water tanks, and was in three pastures, and that the high-line goes in one of his pastures and angles across the other two; that there were five gates placed in his fences by appellant; that he operated the entire 21½ sections as a unit, and that his property, other than the strip condemned, was used by appellant for purposes of ingress and egress. He also testified that erosion has resulted from the placing of the easement on his land, the blading of vegetation, cutting of roads and building of gates. That the soil has blown away beneath some of the gates installed by appellant, leaving as much as three feet of space between the ground and the bottom of the gates, and that his calves crawl under the gates from both sides of the fence.

Appellant's witness, D. E. Luckey, testified that he was an engineer for Texas Electric Service Company; that he was in charge of the design and construction of the transmission line across defendant Campbell's property; that the line carried 138,000 volts; that the line could break;

that appellant acquired the right of ingress and egress across defendant's adjoining land for the purpose of reaching the right-of-way; that appellant had the right to remove trees and blade and kill vegetation in the right-of-way; that transmission lines can cause radio and television interference; that crews would go on the land and inspect the condition of the line; that there would be some increase in traffic across defendant's lands.

While there is considerable difference of opinion between the expert witnesses as to the value of the remaining lands lying between the two highways, before and after the taking, the jury could have found, with the evidence before it, that the land had depreciated in value as little as two cents per acre or as much as $79.50 per acre. It might also have found, under the evidence, that the land before the taking had a market value of as much as $312 per acre, or as little as $8.97 per acre. Through its deliberations, the jury found that all the land between the two highways had an average per acre market value of $60 per acre before the taking, and that the remaining land between the two highways, after the taking, exclusive of the land taken, had a market value of $57.70 per acre, and that this land had depreciated in market value in the amount of $2.30 per acre. In addition, the jury found that there had been no depreciation in the market value of the balance of the defendant's lands, consisting of 9,670 acres of land. That there had been some depreciation in market value of the 4,105 acres lying between the two highways being uncontroverted, it was within the province of the jury to resolve the conflicts in the testimony of the witnesses; and this it did. The amount of damages is always a question of fact for the jury, and unless it is so excessive or so grossly inadequate as to indicate operation of an improper influence in determination of the amount, the jury finding will not be disturbed on appeal. Medrano v. City of El Paso, Tex.Civ.App., 231 S.W.2d 514;

Thompson v. Janes, Tex.Civ.App., 245 S. W.2d 718, affirmed by Sup.Ct., 151 Tex. 495, 251 S.W.2d 953.

Appellant urges in support of its contention that the verdict and judgment is excessive; that defendant's only witnesses on the value of the lands in question were two former commissioners, F. E. Summers and John F. Moore; that while sitting as commissioners in a quasi-judicial capacity as officers of the court, they fixed the total amount of damages to which the defendant was entitled in the sum of $4,680; but in their capacity as witnesses on the trial of this case, one of these witnesses testified to figures which would have amounted to in excess of $320,000 damages to defendant, and the other to figures which would have amounted to in excess of $60,000 in damages.

One who has served as a special commissioner is not disqualified to testify as a witness to land values in the county court. City of Houston v. Schorr, Tex.Civ. App., 231 S.W.2d 740; City of Corpus Christi v. Magee, Tex.Civ.App., 285 S.W. 2d 236.

While the amount of the award of the special commissioners, which has been excepted to in accordance with the provisions of Article 3266, ¶ 6, Vernon's Ann.Texas St., is not a matter which may be placed in evidence for the purpose of establishing a measure of damages for consideration by the jury, we do not believe that the party excepting to the award is entirely precluded, on cross-examination, from questioning a witness regarding his prior findings as to values while acting as a special commissioner, where the same witness, on direct examination, has testified to damages substantially different than those found by him in his former capacity as special commissioner. The record does not reflect that appellant made any effort, in the court below, to impeach the testimony of appellee's witnesses on value, and raises the question for the first time on appeal. No bias or prejudice on

the part of these witnesses having been shown below, and the witnesses not having been afforded an opportunity to explain or deny their alleged biased testimony, we are of the opinion that this is not a matter we may consider on this appeal. See Texas Law of Evidence, McCormick & Ray, pars. 329 to 331.

From what we have said, it follows that appellant's Points 1, 2, 3, 4, 5 and 6 are overruled.

Appellant has complained by Points 7 to 13, inclusive, that the trial court erred in admitting and refusing to strike the testimony of appellee's witnesses, Seth Campbell and L. B. Eddins, showing the acts of various persons on the lands of defendant, which appellant contends constituted crimes or trespasses against defendant, or an unreasonable or excessive use of said lands not authorized by the terms of the easement obtained, and thus the subject of an independent action on the part of the landowner for damages. .

We have carefully reviewed the testimony complained of, and particularly that of the witnesses relating to an alleged trespass by unidentified third persons on the lands of defendant lying south of the Kermit-Odessa highway and south of appellant's transmission line. While this evidence was clearly inadmissible, and should have been stricken on appellant's motion to strike, the jury, in answering Special Issues Nos. 5 and 6 relating to the particular lands upon which the trespass, or unreasonable use, was alleged to have taken place, found that there had been no depreciation in the value of such lands, and no damages. In view of the jury finding in this regard, we are of the opinion that the error complained of is harmless and does not require a reversal of this cause. Rule 434, Texas Rules of Civil Procedure.

It has been frequently held that if a portion of a tract is condemned and compensation is paid, the condemnee or his

successor in interest cannot recover additional damages because of any subsequent use of the land taken which could reasonably be foreseen at the time of the original condemnation, the theory being that the condemnee was compensated for any use of the condemned property foreseeable at the time of taking. City of La Grange v. Pieratt, 142 Tex. 23, 175 S.W.2d 243; State v. Brewer, 141 Tex. 1, 169 S.W.2d 468.

■ In addition to the right obtained by appellant in the strip condemned, the further right of ingress and egress over and across defendant's adjoining lands was prayed for and acquired by appellant. The appellant, itself, is vested with the sole discretion under its power of eminent domain to determine the necessity for the rights it seeks to acquire in the land of others, and its discretion in this regard is not subject to review in the absence of fraud or clear abuse of such discretion. Webb v. Dameron, Tex.Civ.App., 219 S.W.2d 581; Bradford v. Magnolia Pipe Line Co., Tex.Civ.App., 262 S.W.2d 242; Palmer v. Harris County, 29 Tex.Civ.App. 340, 69 S.W. 229.

■ Appellant complains of the testimony of defendant, Seth Campbell, to the effect that he had observed employees, vehicles and equipment of appellant; and employees, vehicles and equipment of the independent contractor employed by appellant to construct the transmission line, use land belonging to appellee other than that contained in the strips actually condemned. It is the contention of appellant that such testimony was improper, on the ground that such use of defendant's other lands, by either appellant or the independent contractor, constituted an excessive and unreasonable use, or was the tort of an independent contractor, and the proper subject of a suit for damages against appellant or the contractor. While such evidence would be clearly inadmissible if offered to show trespass or unreasonable or excessive use of defendant's land, we think such evidence is admissible to show

the extent of the exercise, by appellant, of its right of ingress and egress over and across defendant's adjoining lands, this being one of the burdens placed on the land condemned for the purpose of a right of way for said lines as located, described and designated, together with the right to construct, reconstruct, maintain and operate the apparatus, H-frames, insulators, devices and arrangements necessary or proper to maintain, operate, repair and rebuild the same.

■ When there is nothing to prevent a full exercise of the rights acquired, it is a valid assumption that the condemning authority will exercise its rights and use and enjoy the property taken to the fullest extent permissible under the law. We have no showing here that either the appellant or the independent contractor exercised any greater rights in the property than those acquired by them under the condemnation, nor is there any showing that the rights so exercised were excessive or unreasonable.

■ All factors which depreciate the value of the land condemned, as well as the adjoining land, are proper matters for the consideration of the jury. The issues as submitted to the jury required the jury to find the reasonable cash market value of the land condemned and the adjoining land before and after the taking.

In considering the record as a whole, and the verdict returned by the jury, we are of the opinion that the matters complained of by appellant in its Points 7 to 13, inclusive, do not constitute reversible error, and same are accordingly overruled.

Appellant's final point is No. 14, through which it is contended that the court erred in permitting direct testimony from defendant's witnesses, and cross-examination of plaintiff's witnesses, with respect to sales of one and two acre tracts of land, on the ground that tracts of such size could not be comparable to the land of defendant crossed by the transmission line.

While each case must be considered in the light of its own facts, it is well settled that a witness may give his opinion of the present market value of the land, taking into consideration its adaptability for residential and commercial purposes, and every element that can properly enter into the question of value, and which an ordinary prudent business man would consider before forming judgment in making a purchase. It is proper, only on cross-examination, for the purpose of testing the credibility of the witness or for laying a predicate for impeachment, to inquire into the details or mental processes by which the witness arrived at his opinion or conclusion, and such inquiry on direct examination is improper.

It appears from the record that the sales referred to by appellee's witnesses were sales of unimproved vicinal lands of the same general character as the land sought to be condemned, and ranged in size from one or two acres to as much as 20 acres. The trial court evidently considered the lands, which were the subject of the sales, to be comparable to the 14.88 acres sought to be condemned. Appellant has not questioned the value of $60 per acre which the jury found to be the value of the land taken before the easement was affixed. The land taken was a part of the larger tract and was comparable to the remainder in every respect except size. While we are of the opinion that it was error to admit testimony relating to particular sales on direct examination, no objection was made to the testimony on this ground; appellant's only ground being that the sales were not sales of land comparable to the 21½ sections contained in appellee's ranch. As far as the right of appeal is concerned, any ground of exclusion not relied upon by appellant is waived.

Appellant's Point 14 is accordingly overruled; and, having considered each point raised by appellant, and finding no reversible error, the judgment of the trial court is affirmed.