**CITY OF DALLAS, Appellant,**

v.

**Sid HOLCOMB et ux., Appellees.**

No. 16346.

Court of Civil Appeals of Texas.

Dallas.

June 26, 1964.

Rehearing Denied July 24, 1964.

H. P. Kucera, City Atty., N. Alex Bickley and Kenneth C. Dippel, Asst. City Attys., Dallas; W. H. Frank Barnes, Terrell, for appellant.

Robert K. Ramsey, Terrell, for appellees.

BATEMAN, Justice.

In this case the City of Dallas condemned for pipeline purposes 7.9 acres of land out of a 100-acre tract owned by appellees Sid Holcomb and wife. The date of taking was December 13, 1961. The area taken is a strip approximately 130 feet wide and extends entirely across appellees' property from east to west. The title taken is the fee simple, although there are reserved to appellees, their heirs and assigns, the oil, gas and other minerals, together with the right to use the surface of the land taken for agricultural and grazing purposes, subject to appellant's unlimited right of ingress and egress. The jury found the market value of the 7.9 acres taken, considered as severed land, to be $2,580, and the value of the remaining 92.1 acres before taking at $17,920, and immediately after taking at $12,395. The difference of $5,525, representing damage to the land not taken, added to the $2,580 value of the land taken, totaled $8,105, for which judgment was rendered in favor of appellees. All essential matters

were stipulated except the value of the property taken and damages, if any, to the remainder.

The appellees contracted for purchase of the land in December 1958 and completed the purchase in early 1959 at a cost of $90 per acre. After purchasing the land they moved a small house onto it and in August 1960 they began construction of a dam across an arroyo for the purpose of forming a lake. The condemnation proceedings were begun September 26, 1961, more than a year after construction of the dam was begun. The strip taken by the City cuts through the lake and the dam. There was testimony that prior to the beginning of work upon the dam the location of the pipeline had been staked out and that Holcomb had been advised as to its location. While admitting that he knew the City intended to run the pipeline through his property he denied knowing that it would cut through the dam or the lake.

■ By its first four points of error on appeal the appellant complains of several rulings of the court, all of which resulted in depriving the appellant of the right to prove, by cross examination of Holcomb and introducing other witnesses, that Holcomb knew of the location of the pipeline strip to be taken and that it would cut through the dam and lake, suggesting that he built the dam and formed the lake despite such knowledge and for the purpose of enhancing his damages in these condemnation proceedings. We hold that in the light of the stipulations it was not material to any issue in this case to show that Holcomb did or did not know of the location of the intended pipeline through his property at the time he began construction of the dam. It follows that the trial judge did not abuse his discretion in refusing to permit cross examination of Holcomb concerning the matter, or in refusing to permit the witness Frank A. Royce to testify as to conversations he had with Holcomb at about the time of Holcomb's purchase of the property, tending to show that he knew

in the early part of 1959 where the pipeline would be located.

Appellant asserts that it should have had the right to introduce this testimony to counter that of Holcomb to the effect that he did not know exactly where the pipeline would go. The record shows that the only testimony Holcomb gave as to his lack of knowledge of the proposed location of the pipeline was elicited by appellant's counsel in cross examination.

"In limitation of the broad right to put questions designed to discredit the witness (see § 182) is the established principle that the witness may not be cross-examined as to any fact which is collateral and irrelevant to the issue *merely* for the purpose of laying a predicate for the introduction of independent evidence to impeach him by a showing that, as to the matter embraced in the question, the witness has answered untruthfully." 45 Tex.Jur., WITNESSES, p. 14, § 183.

"The rule which permits a witness to be contradicted by other witnesses is subject to one important limitation. That is, he cannot be contradicted upon a collateral or immaterial matter. The chief reasons for excluding contradiction on collateral matters are reasons of policy. First, too great an inconvenience would result if every alleged error could be investigated. Much time would be wasted and the issues confused. Second, it would be unfair to the witness to expect him to come prepared to meet any error that might be alleged, although entirely beyond the matters in litigation." McCormick and Ray, TEXAS LAW OF EVIDENCE (2d Edition), p. 526, § 683.

■■ The City had no lawful right to destroy appellees' property "prior to the lawful appropriation thereof by paying or securing the payment of compensation." Conversely, appellant has no right to com-

plain of any lawful use made of his property by appellee prior to a legal taking thereof by the City. Hammon v. Wichita County, Tex.Civ.App., 290 S.W.2d 545, no wr. hist.; Kirschke v. City of Houston, Tex.Civ.App., 330 S.W.2d 629, err. ref. n. r. e.; City of Dallas v. McElroy, Tex. Civ.App., 254 S.W. 599, err. dism. w. o. j.; Spann v. City of Dallas, 111 Tex. 350, 235 S.W. 513, 19 A.L.R. 1387; City of Dallas v. Mitchell, Tex.Civ.App., 245 S.W. 944, err. ref.; City of Dallas v. Shackelford, Tex.Civ.App., 200 S.W.2d 869, err. ref. n. r. e.; same case, 145 Tex. 528, 199 S.W.2d 503. The first four points of error are overruled.

By its fifth and sixth points of error appellant complains of the refusal of the court to permit it to show, in the course of its cross examination of appellees' witness Joe Compton, that he had previously expressed the opinion that the property in question was worth approximately 25 percent of the value testified to by him on the trial. This witness, after qualifying as an expert familiar with the land in question, testified that in his opinion the market value of the property at the time of taking was $250 an acre; that after the taking and the destruction of the lake the remainder of the land would be worth only about $90 per acre, and that the total award, for the value of the property taken and the damage to that not taken, should be $21,316. Appellant's counsel then asked: "All right, when you were under oath once before, Mr. Compton," when counsel for appellees made this objection: "I object unless he states the time and place and circumstances." Appellant's counsel then said: "All right, when you signed the oath as a special commissioner to sit on this case and properly assess the values that ought to be paid to this man, dated, your oath signed the 27th day of September, 1961, did you agree to make a proper assessment at that time?" Counsel for appellees then said: "Please the court, I would like to make the objection as to any figures being introduced. It's

all right for him to ask him, but no figures." This objection was sustained. After the witness admitted signing it, appellant's counsel offered the award of the special commissioners in evidence, and appellees' objection thereto was sustained. The witness testified on redirect examination that he was only one of the three commissioners, that he did not agree with the amount of the award, that the other two commissioners did agree on it and that he thought the majority ruled and that he would have to sign it although it was not his award and his idea was different from that. Under the record here presented, we think the court erred in refusing appellant the right to cross examine this witness concerning his signing and swearing to the award of the commissioners, which assessed the total damages at $4,785.42.

Of course, we recognize that under the law the parties were entitled to a trial de novo, in which the amount of the award by the special commissioners is ordinarily not admissible for the purpose of establishing a measure of damages. 22 Tex. Jur.2d EMINENT DOMAIN, p. 428, § 303. But a landowner who introduces the testimony of one of the special commissioners to establish a value substantially different from that certified by him under oath in his former capacity as special commissioner must expect to have his witness vigorously cross examined concerning such discrepancy. In its quest for the truth, the court should have permitted appellant's counsel to cross examine the witness fully. Appellant was entitled to have the jury know that this witness not only swore to a lower award when serving as a special commissioner, but also to know that he assessed that damage at $4,785.42, as compared to the damages of $21,316 he testified to on the trial.

Neither party had said anything to disclose to the jury that the prior opinion was expressed in the award signed and sworn to by the witness, or even that the witness was one of the special commissioners, but

counsel for appellees objected to appellant's counsel going into the matter at all "unless he states the time and place and circumstances." Appellees thus waived their right to object to the award itself being admitted in evidence and in effect invited appellant to disclose that the prior inconsistent appraisal was in fact the award itself. We think the court's ruling in this respect was such error as to deprive appellant of a fair trial, requiring reversal. State v. Kimbauer, Tex.Civ.App., 365 S.W.2d 201, err. ref. n. r. e.; Texas Electric Service Co. v. Campbell, Tex.Civ.App., 328 S.W.2d 208, 213, reversed on other grounds, Texas Electric Service Co. v. Campbell, 161 Tex. 77, 336 S.W.2d 742; Schwab v. County of Bexar, Tex.Civ.App., 366 S.W.2d 952, err. ref. n. r. e. The fifth and sixth points are sustained.

█ In its seventh point of error appellant complains of the refusal of the court to instruct the jury, as requested by appellant, to the effect that "they were not to take into consideration any sentimental value or the desires or personal feelings of the Defendant or any injury personal to them and not a part of the land itself," in view of the fact that Mr. Holcomb had been allowed to testify over appellant's objections that he and his family used the land in question "for weekend purposes," and because his little girl liked to fish, and Mr. Holcomb cried while giving this testimony. We find no such requested instruction in the record before us but, as appellant's statement concerning the matter in its brief is unchallenged by appellees we shall assume that such instruction was properly requested and overruled by the court and that appellant excepted. Rule 419, Vernon's Texas Rules of Civil Procedure.

█ The cases cited by appellant in support of this point hold that in condemnation suits evidence of sentimental value, or of intentions to make the property the owner's home in his declining years, should not be admitted or, if admitted, should be stricken on motion. It is true that the evidence complained of here was admitted over appellant's objection, but there was no motion made to strike it and appellant does not assert in any of its points that the judgment should be reversed because of the error in admitting the evidence. Under these circumstances, we see no reversible error in the refusal of the court to give the requested special instruction. The court correctly instructed the jury as to what should be taken into consideration in determining the values inquired about; the court was not required to include in the charge an instruction as to all the myriad things that should *not* be considered. City of Fort Worth v. Charbonneau, Tex.Civ.App., 166 S.W. 387, err. dism.; State v. Doom, Tex. Civ.App., 278 S.W. 255, no wr. hist.

The seventh point is overruled.

Appellant's eighth point asserts that there was no evidence to support the jury's answer to Special Issue No. 1, inquiring as to the market value of the land taken, merely because two of appellees' appraisal witnesses (one of them being their attorney) compared appellees' land with two other tracts, one selling for $275 an acre and one for $840 an acre. Appellant argues that this testimony is so patently speculative as to destroy its probative value. The point of "no evidence", however, is obviously not well taken because, even if the testimony of these two witnesses was completely destroyed, there were two other qualified witnesses (R. B. Moseley and Searcy Ferguson) whose testimony would support the finding. The eighth point is overruled.

In view of what we have said above, it is unnecessary for us to discuss appellant's ninth and last point, which urges reversal because of the cumulative effect of all the alleged errors.

Because of the error of the trial court in unduly restricting the appellant's cross examination of the witness Compton, we reverse the judgment and remand the case for another trial.

Reversed and remanded.

**352**

■ Without retreating in any respect from our holding that the trial court committed error in restricting the cross examination of the witness Compton, we have been persuaded by careful consideration of appellee's motion for rehearing that this error did not amount "to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case," and that our judgment of reversal was unjustified in the light of Rule 434, Vernon's Texas R.C.P.

■ As said by Mr. Justice Walker speaking for the Supreme Court of Texas in Dennis v. Hulse, Tex.Sup.1962, 362 S.W. 2d 308, 309:

"Under our practice an appellate court is not authorized to reverse merely because the record discloses some error that is reasonably calculated to cause a miscarriage of justice. The party appealing must also show that it probably did cause the rendition of an improper judgment in the case."

■ In addition to the testimony of Joe Compton, the appellees introduced the testimony of seven disinterested and legally qualified witnesses who testified that in their opinion the total damages ranged from a low of $13,488 to a high of $28,488. The arithmetical mean of those figures is $20,-988, which is only $328 less than the total damages testified to by the witness Joe Compton. As we see it now, the most that appellant's counsel could have expected to accomplish by completing the cross examination of Compton, and showing that he had previously assessed these damages at only $4,785.42, was to persuade the jury to reject and disregard Compton's testimony entirely. If that end had been accomplished, there were still seven other disinterested witnesses whose testimony would have easily justified a verdict of more than the $8,105 total damages found by the jury.

Their testimony would not have been affected by the complete obliteration of Compton's testimony. That being true, we cannot say that the refusal of the trial court to permit counsel for appellant to discredit, or even to destroy, the testimony of one witness "was reasonably calculated to cause and probably did cause the rendition of an improper judgment." The burden was on appellant to make such a showing in this court. Our further analysis of the entire record of testimony indicates rather clearly to us that appellant has not met this burden.

The appellees' motion for rehearing is sustained, our former judgment reversing and remanding is set aside, and the judgment of the trial court is affirmed.