## TEXAS & N. O. R. CO. v. BARHAM.
### No. 2716.

Court of Civil Appeals of Texas. Waco.

June 5, 1947.

Rehearing Denied Sept. 4, 1947.

206

F. A. Woods, and Ben L. Parten, both of Franklin, and Baker, Botts, Andrews & Walne, of Houston, for appellant.

Grace & Palmos, of Hearne, and Clint Barham and McNees & McNees, all of Dallas, for appellee.

LESTER, Chief Justice.

This suit was instituted by appellee, Dwight C. Barham, against the Texas & New Orleans Railroad Company, appellant,

for damages as the result of personal injuries alleged to have been sustained by him while an employee of the Railroad Company. For convenience the parties will be designated as in the lower court.

The case was submitted to the jury on special issues which resulted in a judgment for the plaintiff in the sum of $12,000.

The issue relating to the amount of damages sustained by the plaintiff was Issue No. 27 and was submitted in the following form, to-wit:

"State what sum of money, if paid now, will reasonably compensate plaintiff, Dwight C. Barham, for the damages, including doctor, medical and hospital bills, which he sustained on account of his injuries, if any, at the time and on the occasion in question."

In connection therewith the court gave the following charge:

"In arriving at your findings of such damages, if any, you may take into consideration the nature and extent of the injuries he has sustained, if any, as shown by the evidence, and any pain or suffering or mental anguish, if any, he has undergone in the past on account of said injuries, if any. And if you believe from the evidence that such injuries, if any, are of a permanent nature, you may also take into consideration any loss of time or incapacity to labor, from date of injury, if any, and diminished earning capacity in the future, and any pain or suffering, if any, you may believe from the evidence he may sustain or suffer in the future, if any."

The defendant objected to the submission of said issue "because such issue authorizes the jury to include as damages, 'doctor, medical and hospital bills,' without regard to the necessity or reasonableness thereof. Such issue therefore places an undue burden upon this defendant and submits an improper measure of damages not recoverable in this case."

The court overruled said exception, and such action on the part of the court is assigned as error by the defendant.

■ It is the well settled law of this state that one who has been injured by the wrongful act of another is entitled to recover reasonable and necessary expenses caused thereby. 13 Tex.Jur., p. 189, sec. 94; 25 C.J.S., Damages, § 45, p. 524; Wheeler v. Tyler S. E. Ry. Co., 91 Tex. 356, 43 S.W. 876, 877; Missouri, K. & T. R. Co. v. Warren, 90 Tex. 566, 40 S.W. 6; Gulf, C. & S. F. R. Co. v. Harriett, 80 Tex. 73, 15 S.W. 556. Such expenses must not only be reasonable in amount, but it must be reasonably necessary that they were incurred as a result of the wrongful act of the opposing party. We quote the testimony concerning such items of expense to show that the reasonable amount of the doctor, medical and hospital bills and the necessity therefor were not established as a matter of law, but they were, in many respects, left in a state of uncertainty.

Plaintiff testified that he was injured on or about February 17, 1941; that he continued to work for several months but did not see a doctor concerning his injury until January 10th or 12th, 1942, after he arrived in Honolulu; that since he arrived in Honolulu in 1942 he had been to several doctors for treatment, two in Honolulu, one in San Antonio, two in Dallas and several in the army, but there was no testimony as to the nature of the treatment received by him from the doctors, except when he was in Honolulu the doctor gave him sun ray treatments for his back, nor was there any testimony of the amount of the charges made, nor the reasonableness of such charges, except that plaintiff was asked: "Have you had any medical expenses as a result of this injury?" and he answered: "Yes sir." Then he was asked: "Have you obligated yourself to pay any more money for medical fees?" and he answered: "About $400.00." Dr. Ruth Jackson testified that she examined the plaintiff on May 23, 1946, and again on October 4th, and that she had some X-ray pictures made of plaintiff's back and spine, and from a physical examination of the plaintiff she was of the opinion that he had sustained a very serious injury to his back and spine at the fourth and fifth lumbar vertebrae and that the X-ray pictures she had made also revealed such an injury; that her fees up to the date of trial, including the X-ray pictures, were approximately

$30 or $40. She testified, in answer to a question propounded by plaintiff's attorney:

"Q. Doctor, is there any way, in your opinion, by which he might be relieved of the pain and suffering which he now has and he will continue to have unless some immediate action is taken? A. I think the only thing to do, the only other thing, the convenient thing of postural exercise, to increase the space of the two vertebras. The only other thing that could be done is operate and the operation it would mean going into the point of injury, of the two injured discs, and very often find fracture and remove the injured disc, and by this it has become necessary that the scar tissue take it out, then replace it to a space function and then graft the piece back of his spine to return it in that area or a joint from the outside."

She further testified that all operations of this kind were not entirely satisfactory. She also said that the average fee in Dallas for the operation would be about $500; that he would be required to go to the hospital for at least two or three weeks; that the fees of the hospital changed every month but she gave an estimate of what she thought the hospital fees would amount to and detailed other expenses in connection with said operation, many of said items being based upon certain contingencies, but she failed to testify that the amount of such items of expense detailed by her was reasonable.

The defendant placed upon the stand four doctors, whose qualifications were unchallenged. None of them had made a physical examination of the plaintiff but they had examined the X-ray pictures that Dr. Jackson had testified about, and each one testified that the pictures disclosed no serious back injury such as Dr. Jackson had described.

■ The measure of plaintiff's recovery in respect to the expenses he sustained is not what he obligated himself to pay, but he is limited to the reasonable value of such expenses that it was reasonably necessary for him to sustain as a result of his injuries. The burden is upon the plaintiff to make such allegation and proof, and the defendant was entitled to a charge limiting the consideration of the jury to the reasonable amount of such expenses that were reasonably necessary for the plaintiff to incur. The failure of the court to frame its charge so as to conform to the foregoing rule requires a reversal of the case, since a proper and timely objection made thereto was overruled.

■ Plaintiff contends that there was no error in the issue as submitted: "State what sum of money, if paid now, will reasonably compensate plaintiff, Dwight C. Barham, for the damages, including doctor, medical and hospital bills, which he sustained on account of his injuries, if any, at the time and on the occasion in question." Plaintiff says that the use of the word "reasonably" as placed in the issue just preceding the word "compensate" modified and described the words "doctor, medical and hospital bills", and thereby restricted the consideration of the jury to the reasonableness of the amount and the necessity of such expenses sustained by the plaintiff. With this contention we are unable to agree. In our opinion, those items of expense were submitted to the jury without any limitation whatsoever as to their consideration as to the reasonableness in the amount or the necessity therefor, and permitted the jury, if it saw fit, to bring in a verdict for the full amount of such expenses testified to without a proper guide or limitation placed thereon by the court.

■ Plaintiff says that if the issue is subject to the exception referred to, that same should not result in a reversal of this case because the defendant had the additional burden of presenting to the court a requested issue in writing that was substantially correct. We cannot agree with plaintiff on this proposition. The rule is that if the court fails to submit an issue or define some legal term or give an explanatory charge desired by a party, then it is the duty of such party to object to such action on the part of the court in failing to do so, and then, in addition to his objection, prepare and submit in writing one that is substantially correct, requesting the court to give same, but there are some well established exceptions to the

foregoing rule. One is that a party is not required to submit a controlling issue of recovery or defense relied upon by the opposing party. A proper objection to such failure of the court to so submit is sufficient. Another one is that if the court submits such issue or attempts to give a definition or an explanatory charge, even though unsatisfactory and incorrect, this brings the parties within the provisions of Rule 274 instead of Rule 279, and the only duty required of a party is to except to the same in language sufficiently clear to call the court's attention to such error, and if overruled, the complaining party is entitled to have the alleged error reviewed by the appellate courts. Texas Employers Ins. Ass'n v. Mallard, 143 Tex. 77, 182 S.W. 2d 1000; Pappas v. Wright, Tex.Civ.App., 171 S.W.2d 536; Lewis v. American Surety Co., 143 Tex. 286, 184 S.W.2d 137; Russell Construction Co. v. Ponder, Tex.Civ. App., 182 S.W.2d 857; Panhandle & S. F. R. Co. v. Villarreal, Tex.Civ.App., 153 S.W.2d 350.

Since the submission of this case in this court plaintiff has filed herein a motion offering to remit the sum of $1210, representing such doctor's, hospital and medical bills, or in the alternative, such other sums as the court might deem proper; and in support of his motion cites the following cases: Missouri K. T. R. Co. v. Warren, 90 Tex. 566, 40 S.W. 6; El Paso Electric Co. v. Sierra, Tex.Civ.App., 109 S.W. 986; Citizens R. Co. v. Hall, Tex. Civ.App., 138 S.W. 434; The Oriental v. Barclay, 16 Tex.Civ.App. 193, 41 S.W. 117; Galveston, H. & S. A. R. Co. v. Duelm, 86 Tex. 450, 25 S.W. 406; Pecos & N. T. R. Co. v. Winkler, Tex.Civ.App., 179 S.W. 691; Fort Worth & D. C. R. Co. v. Viney, Tex.Civ.App., 30 S.W. 252; Houston & T. C. R. Co. v. Pereira, Tex.Civ. App., 45 S.W. 767; Wheeler v. Tyler S. E. R. Co., 91 Tex. 356, 43 S.W. 876; St. Louis S. W. R. Co. v. Haynes, Tex.Civ. App., 86 S.W. 934. We think the cited authorities are distinguishable from this case in that in each of those cases the tainted amount of the judgment could be ascertained with some degree of certainty either from the pleadings or the evidence, and in many instances, from both. In this case plaintiff alleged that as a result of the negligent acts of the defendant he had been forced to incur medical treatment and medical expenses in the sum of $250, and that such expenses would continue to accrue against him for the remainder of his natural life, and followed with his prayer, in which he prayed for the general sum of $60,250. The only specific amount alleged by the plaintiff is the sum of $250 which he had already incurred as medical expense. The rest of his pleading in this respect was that he would incur medical expenses during the remainder of his life, without setting out any amount, which is certainly very indefinite and uncertain as to what the amount of such expenses would be. His evidence is also uncertain as to the amount of such expenses. He was asked the following question:

"Mr. Barham, have you had any medical expense as a result of this injury?" To which he answered: "Yes sir."

"Q. Have you obligated yourself to pay any more money for medical fees? A. About $400.00."

We think a fair conclusion from the foregoing testimony would be that he had been put to other expenses in addition to the $400 that he had testified he had obligated himself to pay, but the amount is not given. He also testified that he would have to continue to pay medical expenses in the future. Dr. Ruth Jackson was the plaintiff's only medical witness and she testified that plaintiff would incur several hundred dollars in medical expense in the future, and attempted to detail the nature of such expense and the amount thereof; but in several respects many of the items, as well as the amounts, are uncertain and indefinite and based upon contingencies. She also testified that operations of this kind were not always successful or satisfactory, that there was an element of chance in them. From this testimony the jury could fairly conclude that the operation to be performed upon the plaintiff might not be successful and that he would be required to incur medical expenses in the future for a longer period of time, but the amount is not disclosed.

From the pleadings and evidence as a whole, we are unable to say with any degree of exactness what amount the jury intended to allow the plaintiff for such expense.

Another reason that we do not think a remittitur should be permitted is that it is impossible to say what effect such testimony had upon the general verdict rendered by the jury. Some of the testimony would indicate plaintiff might require medical treatment for an indefinite period of time. But what those expenses will reasonably amount to we cannot tell, but to say the least, he has and will incur, according to the testimony introduced in his behalf, medical expenses in excess of $1300. This large amount alone would naturally have a tendency to cause the jury to conclude that plaintiff's injuries were of a more serious and permanent nature and that his suffering was greater than it would have been if the expenses were small. So it is impossible for us to determine what effect such testimony had upon the general verdict of the jury in awarding plaintiff damages for physical and mental pain, loss of time and his diminished capacity to labor in the future. Galveston, H. & S. A. R. Co. v. Wesch, 85 Tex. 593, 22 S.W. 957.

Defendant raises several other points, but since the case, in our opinion, must be reversed, we will discuss only those that are likely to occur upon another trial.

Defendant's second point is as follows: "The error in the court's charge authorizing the jury to take into consideration hospital bills which plaintiff may have incurred in the past; there being no evidence of such hospital bills having been incurred." Plaintiff testified that he had, up to the date of the trial, obligated himself to pay about $400 in medical fees; that while he was at Pearl Harbor he did not work regularly because he had to take sun ray treatments from the doctor, but the record is absolutely silent about the plaintiff ever having been in the hospital. So we say, in passing, that upon another trial, unless the plaintiff offers some proof that he has been in a hospital as a result of his injury prior to the date of the trial, the court should frame its issue or give an explanatory charge confining the consideration of the jury to such hospital bills, if any, that the plaintiff might in reasonable probability sustain in the future. We cannot agree with the plaintiff's theory "that the jury would have the right to allow plaintiff damages for hospital bills incurred in the past on account of the plaintiff's testimony that he had obligated himself to pay about $400.00 in medical fees."

The court submitted to the jury Issue No. 11 as follows:

"Do you find from a preponderance of the evidence that the operator of the burro failed to exercise that reasonable degree of care for the personal safety of plaintiff which he then owed to the said plaintiff as a fellow employee on said job?"

The defendant made various objections to said issue, but the error of the court in submitting the issue in the form and manner in which it did would not require a reversal of this case, because the jury found the operator of the burro guilty of several specific acts of negligence, and further found that each separate act of negligence was a proximate cause of the injury of the plaintiff, and also found the operator guilty of discovered peril. But in view of another trial, we will express our views on the matter. The rule is that where a case is submitted upon special issues, it is error on the part of the court to submit the whole theory of plaintiff's case as to negligence in one issue, because such manner of submission would be in the nature of a general charge and not confined to the specific acts of negligence pleaded and proven in said cause. No one can tell what act or acts of negligence the jury intended to find against the operator, whether such act has been pleaded, or whether the same has sufficient support in the evidence. A defendant is entitled to have each act of negligence relied upon by plaintiff submitted separately.

Defendant's fourth proposition raises a very serious question concerning misconduct of the jury, but we do not consider it necessary to pass upon the point at this time as it is not likely to occur upon another trial.

Defendant's fifth point is: "The error of the court in admitting in evidence certain X-ray pictures, purporting to show injuries

to plaintiff's back and spine, over defendant's objection that they were not sufficiently identified and proven to be correct portrayals of his alleged injuries, were not properly proven, and are hearsay and prejudicial to the defendant." In this connection it will be necessary to quote from the testimony of Dr. Jackson:

"Q. When these X-rays were made of Mr. Dwight C. Barham, did I understand you to say you personally took him into the X-ray room and put him in the position on the X-ray table? A. Yes sir.

"Q. Did you instruct the technician exactly where you wanted the pictures made? A. Yes.

"Q. Did you make more than one picture of him at this particular time in different positions? A. Yes sir.

"Q. Were you in there during all of the time those pictures were made in the different and various positions in which they were made? A. Yes, sir.

"Q. You just take the technician's word for the fact that is the X-ray, just take his word? A. I know that this is his X-ray.

"Q. Why do you know it? A. Because I was present when the X-rays were made. I didn't go in the dark room to develop the films myself, but I know these are the pictures made of Mr. Barham.

"Q. You know it because your technician told you so; that is the way you know it? A. No sir.

"Q. You mark a card and turn it over to the X-ray technician, one patient after the other, isn't that the way you do it? A. No sir, that isn't the way.

"Q. How did you do it? A. I just told you I went to the X-ray room and showed the technician what part I wanted X-rayed. As far as turning the patients over to the technician I don't know anything about it. I don't want to know anything about it. She does that and takes them in for development. She does not take a dozen films of different patients in the dark room at one time to develop. She takes one set of X-rays at a time in the dark room and you see the X-ray as soon as they are developed, before any other patient is sent in. She doesn't take a number of films into the dark

room to develop at the same time, only one patient at a time.

"Q. There will be a number of different patients the same day, isn't that right? A. Right, but that has nothing to do with it. In X-raying one particular patient only that X-ray is made at that particular time. No other patient is sent in and no other X-rays are taken. When they are ready to be developed they are developed.

"Q. Did I further understand you to say that at the time they went into the dark room there were no other films to be developed except those of Dwight C. Barham? A. Yes sir.

"Q. Did you immediately after the developments were made of those pictures, get them into your possession and examine them at that time? A. I went into the dark room as soon as they were developed and looked at them and examined them, yes."

She further testified on cross-examination:

"Q. Did you make those pictures? A. No sir, I don't make X-ray pictures myself.

"Q. Did you see them developed? A. You mean, did I go in the dark room?

"Q. Yes ma'm. A. No, certainly not.

"Q. You are not an X-ray technician? A. No sir.

"Q. You don't take X-ray pictures? A. Not if I can keep from it.

"Q. Do you retire from the X-ray room while the picture is actually being made? A. Oh, yes, I don't stay in there, I have other things to do.

"Q. You turned him over for the X-ray of that man? A. If I couldn't have a technician I could trust I wouldn't be much of a doctor.

"Q. Is the technician here as a witness? A. No sir.

"Q. You don't know it of your own knowledge, you didn't see it? A. I saw them before they went into the solution and saw them after they came out of the solution.

"Q. You couldn't tell anything about it before it was put in the acid? A. No,

I couldn't until they were made. I went into the dark room as soon as they were developed and looked at them and examined them. It takes at least ten minutes to develop them.

"Q. So, all together, it takes about how long from the time the patient is on the table until you get the X-ray pictures back to you? A. Well, it varies, it takes anywhere from twenty minutes to thirty minutes. I don't stay in the room while the picture is being developed. I stay in the room while the picture is being taken."

▇▇▇▇ In support of its contention the defendant cites the following authorities: Kansas City, M. & O. R. Co. v. Swift, Tex. Civ.App., 204 S.W. 135, which holds that X-ray photographs should be accompanied by proof or admission that they are correct before admitted in evidence. Traders & General Ins. Co. v. Wright, Tex.Civ.App., 95 S.W.2d 753, point 9, holds that X-ray photographs of an injured person are not admissible without proof that they are correct portrayals of the injuries. 17 Tex. Jur., p. 736, sec. 317, and Texas Indemnity Ins. Co. v. Phillips, Tex.Civ.App., 153 S.W. 2d 503, are also cited by defendant. We are in complete accord with the rule enunciated by these authorities. In the case of Texas Indemnity Co. v. Phillips, supra, upon which the defendant so strongly relies, is not in point with the facts of this case. In that case Dr. Bruhl was appellee's only medical witness, who testified that he had gotten the pictures from Dr. McHenry's office; that he was not present when they were taken. They were admitted in evidence with the appellant's consent, with the understanding that the pictures would be properly proven up during the trial, but appellee failed to offer any other proof as to their identity or correctness, and at the close of the evidence the appellant moved to strike Dr. Bruhl's testimony given in reference to said pictures on the ground that they had not been properly proven up. The court overruled the motion and the Court of Civil Appeals reversed the judgment of the trial court, which we think was proper under the facts of that case. In this case we have an entirely different situation. Here we have Dr. Jackson, who supervised the taking of the pictures. She testified that she was actually present when they were taken; that she placed the plaintiff in position for each picture and gave instructions to her technician as to what portion of the body of plaintiff she desired to be photographed. It is true she did not go into the dark room while the pictures were being developed, which from her testimony, took only about ten minutes, but she got possession of them immediately after they were developed; that she knew there were no other pictures to be developed at that time.

In the case of Jenkins v. Charleston General Hospital & Training School, 90 W. Va. 230, 110 S.E. 560, 566, 22 A.L.R. 323, at page 332, the court had this to say concerning the admission of X-ray pictures: "The evidence admitted over objections of the defendant, consisted of X-ray plates taken under the general direction of the surgeon who performed the two operations mentioned, but not in his presence. As they were taken for him and by his direction, and used and identified by him, they were properly admitted."

32 C.J.S. Evidence, § 712, p. 615, holds that: "X-ray pictures may be admitted where they tend to aid the jury to understand the nature and extent of injuries involved."

▇▇▇▇ We are of the opinion that in this case the plaintiff met the requirements of the rule in establishing the identity and correctness of the X-ray pictures herein in question with sufficient certainty as to make them admissible, and that the failure of the plaintiff to further strengthen his evidence in this respect would affect the weight to be given such testimony rather than its admissibility.

In its sixth proposition the defendant complains of the court's action in admitting over its objection testimony of plaintiff's witness Joe B. Lowe concerning extraneous and immaterial matters. The bill was approved by the court with the following qualification:

"The testimony complained of in said Bill of Exception No. 1 was developed by counsel for plaintiff upon redirect examination of the witness, Joe B. Lowe, and

was brought out because of matters gone into by counsel for defendant upon his cross-examination of said witness Joe B. Lowe, as follows:

"Q. How long did you work for the railroad company? A. About thirty months.

"Q. You understand that when an employee gets hurt it is his duty under the rules to report the fact that he was injured? A. Yes, sir.

"Q. Don't you have a form to fill out and make a report of that injury—Company Form 2611? A. I don't know what the number is.

"Q. But you have a form? A. Yes, sir.

"Q. If you go to the doctor or don't go to the doctor? A. I think so.

"Q. If you didn't, it would be because you didn't think you was hurt, wouldn't it? A. Yes.

"Q. If you were working for the railroad company and you actually got hurt, you would comply with the rules and send in a report, wouldn't you? A. Yes, if I thought I was hurt, I would.

"Q. If you thought you was hurt you would go and see a doctor too? A. Well, I did one time.

"Q. Well, that is what you would ordinarily do? A. Yes.

"Q. There was a doctor there for you, you helped pay the doctor? A. If I could get to him I would go see him.

"Q. If you thought it was bad enough you would go to the hospital? A. I believe I would."

The plaintiff's witness, Joe B. Lowe, while being interrogated by plaintiff's attorney, and over defendant's said objection, testified as follows:

"Q. Have you ever, while working for the railroad company, known of an injury where he was not mashed and mangled up, and perhaps the blood was not flowing from him, and the foreman was there, and the foreman would not make out a report on that? A. Yes sir. * * *

"Q. Do you actually know of your own knowledge of an instance like that? A. Yes, I mashed my foot one time. * * *

"Q. Have you known of a man being struck as I have described and sometimes stay on the pay roll and will lay around on the job and draw his pay? A. Yes."

All of this testimony was brought out by the defendant without any objection on the part of the plaintiff. It can readily be seen that a number of the questions propounded by the defendant were subject to objection, and if the plaintiff had excepted to such evidence there is little doubt but what the court would have sustained him. The rule is that if a party sits by and without objection permits immaterial and extraneous matters to be introduced in evidence, he will not be permitted as a matter of right to go into such matters in the face of a proper and timely objection, simply because the opposing party, without objection, first brought them out. Plaintiff knew that he had a right to see the company doctor concerning his injury if he so desired. He also knew that he had a right to go to the hospital if his injuries justified it, but he made no request for either because, he said, he believed that his injuries were not of a serious nature and that he would be all right in a short time. It is our opinion that the defendant's objection should have been sustained.

Defendant's seventh proposition is: "The error of the court in refusing to permit defendant's attorney to cross-examine the plaintiff as to whether he was actually supporting his child; the plaintiff having voluntarily injected that issue into the case by his own testimony." The evidence shows that plaintiff continued to work for the defendant for at least three or four months after he was injured. He then worked for Brown & Root as a pile-driver for two or three months, and then he went to Pearl Harbor and worked for approximately one year. While the plaintiff was being cross-examined by the defendant concerning the character of work done by him in the various jobs he had held subsequent to his injury, and the statements he made in his applications for employment and why he had not given the information concerning this injury in such applications when he was asked if he had ever been injured, the defendant's attorney asked the plaintiff:

"Why was it you got a job from Brown & Root?" The plaintiff answered: "Because a man has to work; he can't stop when he has a kid to take care of." Plaintiff's attorney spoke up and asked: "What did you say?" and the witness answered: "I have a child to support and take care of." The defendant then attempted to cross-examine the plaintiff to determine whether he was supporting his child and the court refused to permit such facts to be developed.

The right of cross-examination is a valuable one. 44 Tex.Jur. p. 1141, sec. 145; 44 Tex.Jur., pp. 1150, 1151, sec. 150; 45 Tex.Jur., pp. 12, 13; Evansich v. Gulf, C. & S. F. R. Co., 61 Tex. 24; Ely v. Lasch, Tex.Civ.App., 11 S.W.2d 593; Lampkin v. State, 47 Tex.Cr.R. 625, 85 S.W. 803. We think the defendant was deprived of such a right when he was refused the privilege of interrogating the plaintiff as to the real facts concerning the support of his child. If the jury believed that the plaintiff was really supporting or making an honest effort to support his child, and even though he was suffering great physical pain, he continued to work in order that he might perform his parental obligation to his child, the jury, in all probability, would be inclined to take such fact into consideration in passing upon his credibility as a witness, and it would at least place him in a more favorable light before the jury if they believed that he was going through pain and suffering in order to perform such duty. We believe that the defendant should have been permitted to cross-examine the plaintiff as to whether or not he was supporting his child when he went to work for Brown & Root.

The judgment of the trial court is reversed and the cause remanded.