## GREAT NATIONAL LIFE INSURANCE CO., Appellant,

v.

## Phyllis J. DAVIDSON, Appellee.

### No. 05–84–00438–CV.

Court of Appeals of Texas, Dallas.

Jan. 22, 1986.

Rehearing Denied April 8, 1986.

Ernest Figari, Johnson & Swanson, Dallas, for appellant.

Michael F. Pezzulli, Dallas, William E. Wright, Houston, for appellee.

Before SPARLING,[1] GUILLOT and MALONEY, JJ.

MALONEY, Justice.

This is an appeal by Great National Life Insurance Company from a judgment in favor of Phyllis J. Davidson, in an action to recover on a life insurance policy. The principal defense was that the insured had not died. Great National asserts thirty-six separate points of error, which may be grouped into three broad categories. The first major contention by Great National claims error in denying requested special issues concerning fraudulent material misrepresentations made by the insured. Second, Great National asserts error in the admission of several photographs purporting to depict the insured after his death. Third, error is claimed in allowing a key witness to claim a "privilege" in response to Great National's attempted cross-examination, thereby depriving it of a full and fair opportunity to question the witness. Various other points of error raise questions concerning improper arguments made before the jury. We agree with Great National's contentions concerning the claim of a "privilege" and therefore reverse and remand this cause for a new trial.

---

1. Justice Sparling concurred in the opinion prior to his resignation of December 31, 1985.

On May 2, 1980, an individual calling himself Dauod Alqassab (also variously referred to as "David Alqassab" or "David Kassab" or "David J. Kay") applied to Great National for a life insurance policy in the amount of one million dollars. The application designated Alqassab's business partner, Ilan Eiger, as the intended beneficiary.

After investigation by Great National, the policy was issued on June 25, 1980. On September 29, 1980, Alqassab changed the ownership and beneficiary designation on this policy, along with three other life insurance policies, to Phyllis J. Davidson. The combined total of these policies was $3,750,000, carrying annual premiums in excess of $47,000. Alqassab and Davidson had been divorced since August of 1968, and were parents of three adult sons. On February 7, 1981, David Alqassab traveled to Tel Aviv, Israel. Early in the morning of February 11, 1981, a body was found near Alqassab's hotel, apparently the victim of murder. The body, identified by eyewitnesses as that of Dauod Alqassab, was buried in Israel on February 13, 1981. On February 12, 1981, Great National was informed of Alqassab's death; formal claim to the policy was made by Davidson on June 1, 1981. Great National thereafter notified Davidson of its intention to rescind the policy because of fraud and tendered to her all premiums previously paid.

Davidson filed suit seeking recovery on the policy. Great National denied liability and alleged fraud on the part of Alqassab. Great National took the position at trial that David Alqassab materially misrepresented his insurability by failing to disclose other pending life insurance applications and failing to disclose changed conditions occurring in the period between Alqassab's signing of the Great National application and the date of the policy's issuance. Furthermore, Great National asserted conspiracy to misrepresent that David Alqassab died in a foreign country when, in fact, he was still alive.

In answer to special issues the jury found: 1) that Alqassab was dead; 2) that the insured did not misrepresent his name, occupation, or amount of insurance in force on his life; and, 3) that Alqassab's representation regarding pending applications was false, but it was not made with an intent to deceive. On these findings the trial court awarded Davidson the policy proceeds, 12% interest allowable by statute, attorney's fees, interest and costs. Great National's motion for new trial was denied.

In presentation of the plaintiff's case, Zvi Kassab, a cousin of David Alqassab, testified as to his identification of the murder victim. At the request of the Tel Aviv police, he was called to the morgue and identified the body as that of David Alqassab. The plaintiff next presented Schmuel Carmelli, a police inspector in Tel Aviv in charge of this investigation. Carmelli testified about the investigation and the identification procedures used. His testimony was that no scientific identification methods such as fingerprinting or comparison of dental records were used; instead, identification was based solely upon visual identification by a family member and a friend of David Alqassab. All witnesses testifying as to the identity of the murder victim admitted that the face of the body had been badly damaged, apparently having been run over by an automobile.

Great National based one of its defenses on allegations of conspiracy to misrepresent that David Alqassab had in fact died; thus, the identity question was central to the trial proceedings. On cross-examination of Inspector Carmelli, Great National sought information concerning the investigation conducted by the Tel Aviv police. In response to these questions, Carmelli refused to answer, claiming that the report contained privileged information.

In points of error eight through fourteen, Great National complains of the trial court's action in allowing Carmelli to claim this privilege. When the question of a privilege was first raised, the trial court allowed the witness to refuse to answer questions. Later, the judge interrogated the witness *in camera* concerning the status and findings of the Tel Aviv investiga-

tion.[2] After this interview, the trial court instructed the witness to answer Great National's questions. Although Carmelli continued to refuse to answer certain questions, the court denied Great National's motion for sanctions. Both Great National's motion for mistrial and motion to strike the direct testimony were denied. The court was apparently sustaining the claimed privilege without so stating.

 In Texas, the general rule is that no person has a privilege to refuse to disclose any matter. TEX.R.EVID. 501(2). The only privileges recognized are those enumerated in the rules of evidence or specifically granted by statute. In the present case the "privilege" claimed by the witness is one which is not specifically recognized by the Texas Rules of Evidence. *See* TEX. R.EVID. 501–13. The only possible basis upon which Carmelli could have a claim to a valid privilege is if Israel recognizes the specific privilege claimed. Under the provisions of TEX.R.EVID. 502, Texas courts would be compelled to honor a foreign jurisdiction's privilege when that jurisdiction requires by law that certain information not be reported. Even if Israel grants such a privilege as would require recognition by a Texas court, in this instance, the privilege was improperly recognized. The party invoking such a privilege has the burden of proving its existence and applicability. *McGrede v. Rembert National Bank*, 147 S.W.2d 580, 584 (Tex.Civ.App.— Texarkana 1941, writ dism'd judg. cor.). Appellee failed to meet her burden here. Since appellee failed to show a legitimate privilege, it was improper for the trial court to permit the witness to refuse to answer questions.

In reviewing the proceedings, it is apparent that Carmelli chose to invoke his "privilege" selectively. On direct examination, he freely answered certain questions concerning the status of the police investigation, yet he refused to answer the same type questions during cross-examination.

The information Great National sought concerning Carmelli's later doubts regarding the body's identification was highly relevant in their attempt to discredit the witness' testimony. Furthermore, Great National's attempts to show to the jury the possibility of a conspiracy was severely hampered by its inability to question Carmelli concerning suspects in the murder.

 In *Texas Employers' Insurance Association v. Garza*, 308 S.W.2d 521, 527 (Tex.Civ.App.—Amarillo 1957, writ ref'd n.r.e.), the court discussed the right to fully cross-examine a witness: "This court, as have many others, has held that the right to cross-examine a witness is a substantial one, and it is error to so restrict it as to prevent the cross-examining party from going fully into all matters connected with the examination in chief." (Citations omitted). The court went on to affirm the trial court because, in that instance, the judge did not abuse his discretion in allowing broad cross-examination by appellee's counsel. However, in cases addressing instances where cross-examination has been restricted, Texas courts have reversed judgments because of undue restraints. Denial of full cross-examination in *Texas & N.O.R. Co. v. Barham*, 204 S.W.2d 205, 214 (Tex. Civ.App.—Waco 1947, no writ), prompted reversal because the trial court did not allow full development of facts which might have placed him (appellant) in a more favorable light before the jury. Likewise, the Amarillo Court of Civil Appeals reversed the trial court in *Murray v. Morris*, 17 S.W.2d 110, 111 (Tex.Civ.App.—Amarillo 1928, writ dism'd), saying, "The purpose of a cross-examination is to sift and to modify and to have the witness explain what has been said on his direct examination, and if the witness by this process can be discredited and the weight of his testimony weakened, the right should not be denied." (*quoting Pecos & N.T. Ry. Co. v. Porter*, 156 S.W. 267, 274–275 (Tex.Civ.App.— Amarillo 1913, no writ)). The court went

---

**2.** No transcription or other recording of this proceeding, sealed or otherwise, is contained in the record of this cause.

on in *Pecos* to say, "A witness may be cross-examined as to his examination in chief in all its bearings and as to whatever goes to explain or modify what he has stated in his examination in chief, and *prejudice will be presumed where this right is denied.*" 156 S.W. at 275 [*quoting* Thompson on Trials (2d Ed.) § 406] (emphasis added). In the case before us, allowing Carmelli to refuse to answer questions resulted in depriving Great National of a full cross-examination. This deprivation was error such as to deny appellant a fair trial. *City of Dallas v. Holcomb,* 381 S.W.2d 347 (Tex.Civ.App.—Dallas 1964, writ ref'd n.r. e.). Evidence establishing the identity of the murder victim was open to attack on grounds of credibility of the witnesses and the possibility of their interest in the outcome. Pursuit of these questions was foreclosed by denying Great National the opportunity to fully cross-examine the key witness for the appellee.

We hold that the trial court abused its discretion when it improperly allowed the witness Carmelli to claim a privilege and thus unduly restricted appellant's right to cross-examine the witness as to his direct examination testimony. Because we reverse on the points stated, it is unnecessary that we address appellant's remaining points of error.

We reverse the judgment of the trial court and remand the cause for a new trial. Costs are taxed against Phyllis J. Davidson.

Before GUILLOT, McCRAW and HOLLINGSWORTH, JJ.

PER CURIAM.

On motion for rehearing, Appellee directs the court's attention to certain parts of our opinion which are "factually incorrect." We agree that paragraph six may be somewhat confusing regarding the evidence presented on the issue of the identity of the body but this does not alter our disposition of this case.

Inspector Schmuel Carmelli testified that during the investigation by the Tel Aviv police department the only persons who viewed the body for identification purposes were a family member and a friend. Two photographs were also taken at the morgue after the corpse's disfigured face had been cleaned and restructured. One photograph was taken of the body as it appeared at the scene. Several witnesses identified the deceased at trial through the morgue photographs. Apparently, an automobile had run over the deceased, and those witnesses testified that the head was badly damaged.

Appellant's and Appellee's motions for rehearing are overruled.