Phyllis J. DAVIDSON, Petitioner,

v.

GREAT NATIONAL LIFE INSURANCE
COMPANY, Respondent.

No. C–5352.

Supreme Court of Texas.

Sept. 16, 1987.

Rehearing Denied Oct. 21, 1987.

Michael F. Pezzuli, (Sifford & Pezzuli),
Dallas, William E. Wright (Wright & Pat-
ton, P.C.), Houston, for petitioner.

A. Erin Dwyer and Donald Colleluori (Johnson & Swanson), Ernest E. Figari (Figari & Davenport), Dallas, for respondent.

SPEARS, Justice.

This is a suit to recover on a life insurance policy. Phyllis Davidson, beneficiary under a policy insuring the life of Dauod Alquassab, sued Great National Life Insurance Company claiming that Alquassab was deceased and that she was entitled to the policy proceeds. The trial court, based on jury findings that Alquassab was deceased, rendered judgment for Davidson for $1,000,000, on the face amount of the policy plus $400,000 in interest and attorney's fees. The court of appeals reversed and remanded. 708 S.W.2d 476. We reverse the judgment of the court of appeals and remand the cause to that court for further consideration.

In May 1980, a man identifying himself as Dauod Alquassab applied for an insurance policy on his life from Great National Life Insurance Company (Great National). Although unknown to Great National at the time of the application, Alquassab had previously used the names of David Kassab and David Kay; he was convicted of felony fraud charges under each previous name. Alquassab named Ilan Eiger, his partner in a real estate business, as the beneficiary when Great National issued the policy in June 1980. In September 1980, Alquassab changed the beneficiary designation from Eiger to Phyllis Davidson, his former wife from whom he was divorced in 1968. Alquassab then traveled to Tel Aviv, Israel, in February 1981. Prior to his departure, the record indicates that Alquassab allegedly defrauded First City Bank in Houston, of approximately $1.5 million dollars, and committed additional acts of fraud upon other banking institutions.

On Wednesday, February 11, 1981, a body was discovered approximately 100–200 yards from the hotel where Alquassab was registered. The body, which Davidson claims was Alquassab, had been struck by a car and then dragged face down. Great National was notified of Alquassab's alleged death on February 12; the body was buried the following day, Friday, February 13. After Davidson made a formal claim under the policy to Great National on June 1, Great National rescinded the policy because of Alquassab's alleged fraud in procuring the policy, and refused to pay any beneficiary proceeds to Davidson.

Davidson sued for the amount of the policy; Great National answered, alleging fraud and misrepresentation by Alquassab and a conspiracy to fake Alquassab's death. At trial, the jury found (1) that Alquassab was dead; (2) that Alquassab did not misrepresent his name, occupation, or amount of insurance in force on his life; and (3) that some of Alquassab's representations to Great National were false, but not made with intent to deceive.

The controversy here concerns the testimony of one of Davidson's witnesses, Schmuel Carmelli, a high-ranking Tel Aviv police officer. At the trial, Davidson elicited testimony from Carmelli concerning his initial investigation including Carmelli's inspection of the body outside the hotel, interviews with relatives of Alquassab who identified the body as Alquassab, and conclusions regarding the identity of the body. Although Carmelli did not actually identify the body as Alquassab in the presence of the jury, he stated he was certain he knew the identity. Davidson, through Carmelli, also introduced photographs of the body taken at the morgue.

On cross-examination, Great National attempted to discredit and impeach Carmelli's direct testimony by inquiring about (1) a subsequent report made by the Israeli police to the United States Embassy supposedly casting doubts upon Carmelli's initial investigation, (2) Carmelli's lack of knowledge regarding Alquassab's earlier fraud convictions at the time of his initial investigation, and (3) Carmelli's lack of knowledge concerning a criminal connection between Alquassab and a witness, Reuben Shamash, who identified Alquassab's body for the police at the morgue. Carmelli refused to answer these questions, claiming a privilege that the questions involved matters currently under investigation. Great National also sought to bolster its conspiracy

theory by soliciting the identification of the murder suspects. Again, Carmelli refused to answer on claim of privilege although he later testified on redirect that one of Davidson's favorable witnesses—Shamash—was not a suspect.

As the examination of Carmelli continued, Great National objected to his apparent selective use of the privilege and moved the trial court to both strike his testimony and grant a mistrial. The trial court refused although it did recognize the inherent damage from Carmelli's refusal to submit himself to a full and complete cross-examination. The court of appeals reversed and remanded the cause for a new trial based upon its conclusion that Great National was denied an opportunity to fully and fairly cross-examine Carmelli.

Our review begins with Carmelli's purported privilege. The court of appeals correctly recognized that under the provisions of TEX.R.EVID. 502, our courts are compelled to honor a foreign jurisdiction's privilege when that jurisdiction requires certain information not be reported. *Cf. Hobson v. Moore*, 734 S.W.2d 340 (Tex. 1987) (recognizing existence of privilege of "ongoing criminal investigation"). Davidson, by relying on such a privilege, bore the burden of proving its existence and application. *Peeples v. Honorable Fourth Supreme Judicial District*, 701 S.W.2d 635 (Tex.1985). The record is devoid of any probative evidence establishing the privilege. Carmelli merely asserted that some answers were "privileged."

We next turn to Great National's attempted cross-examination of Carmelli. Davidson contends the scope of Great National's inquiry was irrelevant and immaterial to the central issue of identification. We disagree.

Cross-examination is a safeguard essential to a fair trial and a cornerstone in the quest for truth. Longstanding principles of our jurisprudence recognize the right and necessity of full and complete cross-examination. " ... [T]he right to cross-examine a witness is a substantial one, and it is error to so restrict it as to prevent the cross-examining party from go-ing fully into all matters connected with the examination in chief." *Texas Employers Insurance Ass'n v. Garza*, 308 S.W.2d 521, 527 (Tex.Civ.App.—Amarillo 1957, writ ref'd n.r.e.). Due process requires an opportunity to confront and cross-examine adverse witnesses. *Goldberg v. Kelly*, 397 U.S. 254, 268, 90 S.Ct. 1011, 1020, 25 L.Ed.2d 287 (1970); *Baltierra v. State*, 586 S.W.2d 553, 556 (Tex.Crim.App.1979). As the court of appeals correctly observed:

> ... Great National's attempt to show the jury the possibility of a conspiracy was severely hampered by [its] inability to question Carmelli concerning suspects in the murder.

708 S.W.2d at 478. Furthermore, the information concerning the nature, manner, and scope of Carmelli's initial investigation, and his knowledge of material facts at that time were relevant in Great National's attempt to discredit his testimony and undermine the credibility of his conclusions. Thus, the trial court erred by not compelling Carmelli to answer Great National's inquiries or alternatively, striking his testimony. Our conclusion that the trial court erred does not completely dispose of Davidson's appeal.

Reversal is proper only when the error "was reasonably calculated to cause and did cause rendition of an improper judgment." Tex.R.App.P. 81(b)(1). The error stemming from Great National's thwarted cross-examination of Carmelli is harmless because Davidson's other witnesses offered some evidence of Alquassab's demise. Three of Davidson's witnesses identified two photographs of a body in the morgue as that of Alquassab although they did not personally view the body in the morgue. Great National contends the photographs were not properly in evidence and any identification based on those photographs is further error.

The photographs were admitted into evidence based upon witness Carmelli's authentication. The admissibility of a photograph is conditioned upon its identification by a witness as an accurate portrayal of the facts, and on verification by that

315

witness or a person with knowledge that the photograph is a correct representation of such facts. *Goss v. State,* 549 S.W.2d 404, 406 (Tex.Crim.App.1978); *Briones v. Levine's Department Store, Inc.,* 435 S.W.2d 876, 880 (Tex.Civ.App.—Austin 1968, writ ref'd n.r.e.). Carmelli testified he only viewed the body at the murder scene and that he did not view the body at the morgue where the pictures were taken, or view the body after the face and head had been cleaned. Carmelli did testify he was certain that the body he viewed at the scene was the body depicted in the photographs. Thus, Carmelli was competent to authenticate the photographs; the accuracy of his testimony was a question of fact for the jury. *Briones,* 435 S.W.2d at 880. Even if the photographs were not admissible through Carmelli, the record indicates that the photographs were authenticated by witness Shamash who personally viewed the body at the morgue and identified Alquassab as the person in the picture. On cross-examination by Great National, Shamash admitted Alquassab's face was cleaner in the photograph, but that discrepancy goes to the weight of the testimony, not the admissibility. *Briones.* In addition to Davidson's witnesses who identified morgue photographs as Alquassab, Shamash recounted his identification of Alquassab at the morgue, and another of Davidson's trial witnesses recounted his identification of Alquassab prior to burial.

■ We hold these identifications of Alquassab constitute some evidence of his death and support the jury's findings without regard to Carmelli's testimony. We are guided to our conclusion by *City of Dallas v. Holcomb,* 381 S.W.2d 347 (Tex. Civ.App.—Dallas), writ ref'd n.r.e. per curiam, 383 S.W.2d 585 (Tex.1964), where that court held that the error committed in restricting cross-examination did not warrant reversal because, in addition to the witness complained of, the prevailing party introduced the testimony of "seven disinterested and legally qualified witnesses who testified" to the issue in dispute.

Great National responds that since Carmelli was Davidson's "key witness," error

associated with his testimony compels reversal. In *State v. Hilton,* 412 S.W.2d 41 (Tex.1967), we held that error in denying cross-examination of a witness was reversible error because that witness was "the real supporting witness" with impressive credentials and authoritative testimony. Although other favorable witnesses also testified, their testimony was suspect because of familial relationships and inconsistency. *Id.* at 42–43. Here, Davidson's witnesses identifying the body as Alquassab included immediate family members and Shamash, who offered somewhat inconsistent testimony. While we recognize that problems may be present with Davidson's other witnesses, their testimony constitutes some probative evidence which the jury apparently believed during its deliberations two days before Christmas 1985.

In addition to the matters disposed of here, Great National has complained of other points of error including cumulative error, improper jury argument, and denial of jury issues, which the court of appeals has not yet considered. Accordingly, we reverse the judgment of the court of appeals and remand the cause to that court for further consideration.