**Opinion filed January 13, 2011**



## In The

# Eleventh Court of Appeals

_____

### No. 11-09-00176-CV

_____

### IN THE INTEREST OF J.A.S., A CHILD

**On Appeal from the 220th District Court**
**Comanche County, Texas**
**Trial Court Cause No. CCFM-05-09205**

### M E M O R A N D U M   O P I N I O N

Megan Stewart Brock appeals from the trial court's order granting Troy Keith Stone's petition to modify the parent-child relationship. We affirm.

### I. *Background Facts*

Brock and Stone were previously married and are the parents of J.A.S. When they were divorced in 2002, the trial court appointed Brock sole managing conservator of J.A.S. and Stone possessory conservator and ordered Stone to pay child support. In 2004, the parties agreed to modify the possession order to require Stone's possession to be supervised for a period of time and to require the parties to attend counseling.

In 2005, Brock filed a petition to modify the parent-child relationship and requested that Stone's possession of J.A.S. be continuously supervised. Stone responded by filing his own petition to modify. He requested that he be given the right to participate in all future decisions concerning J.A.S.'s mental health care; that for the next two years J.A.S. see only the two

counselors he was currently seeing; and that J.A.S.'s residence be restricted to Comanche County, Palo Pinto County, or within fifty miles of Palo Pinto County. Stone later amended his petition to also seek appointment as joint managing conservator with the exclusive right to establish J.A.S.'s residence and domicile. Brock amended her petition to request further changes to the conditions of Stone's visitation and to increase Stone's child support payments. Brock also filed a motion for enforcement, claiming that Stone was in arrears in his child support payments. The trial court considered both parties' motions to modify and Brock's motion for enforcement in a bench trial.

Brock and Stone were divorced in 2002. Brock married Monty Stewart in 2003. The two separated in 2005 and were divorced in 2006. Brock then married Billie Brock in 2006. Stone married Julie Stone a year before trial. Both couples were still married and were residing in Mineral Wells at the time of the trial.

Brock was critical of Stone's parenting skills. She testified that he did not care for J.A.S. properly during his periods of possession. In particular, she claimed that Stone did not ensure that J.A.S. had everything necessary for school, that Stone brought J.A.S. to school sick and without his homework completed, that Stone failed to properly dispense medication when J.A.S. was sick, and that Stone had not facilitated J.A.S.'s involvement in extracurricular activities. Brock claimed that J.A.S. had returned from Stone's possession with bruises, though she did not accuse Stone of causing them. Brock also claimed that Stone was not current on his child support. Stone testified that he did not know about many of the extracurricular activities that Brock claimed he prevented J.A.S. from attending. Stone agreed that he did not pay child support regularly. He also admitted that he had not filed an income tax return for several years, but claimed that he had filed for extensions.

Stone was critical of Brock's honesty. He contended that Brock filed fraudulent income tax returns for 2006 and 2007 by misrepresenting her marital status and, as a result, improperly received a tax credit. Brock denied committing fraud. She testified that she gave all of her financial information to a tax return preparer and that the preparer filled out the returns. Brock admitted that, before her marriage to Stone, she had been convicted of felony theft in Lubbock and embezzlement and conspiracy in New Mexico and that she had made false representations of fact in a petition for name change. Brock's ex-husband, Stewart, testified and was also critical of her veracity. He claimed that, during their marriage, she stole approximately $243,000 from

2

him. Their divorce decree ordered Brock to repay him over $38,000, but she discharged this debt through bankruptcy. Stewart also claimed that, during their marriage, Brock obtained six or seven credit cards in his name but without his knowledge and that he was still paying the balances on those accounts. Stewart testified that, when he first met Brock, she claimed that J.A.S. was afraid of Stone and that the two were hiding from him. Brock told Stewart that Stone was abusive toward her and J.A.S. and that J.A.S. was afraid of Stone. She told him that J.A.S. would get down on the floorboard of the car if he thought Stone was coming. But when Stewart first saw Stone and J.A.S. together, he recalled that J.A.S. jumped into Stone's arms. Brock denied Stewart's accusations.

Stone also challenged Brock's stability. Brock admitted to having moved six times since she separated from Stewart. She also has two daughters, but their fathers have custody and have raised them. Stewart testified that, after he and Brock separated, he was working on his home computer. The website adultfriendfinder.com flashed up on the screen. This indicated to him that it had been accessed from his computer. Curious, he found provocative photographs, which he identified as being of Brock, posted on the website. Over Brock's objection, printouts of these photographs were admitted into evidence. Brock denied ever posting on adultfriendfinder.com and maintained that the photographs were not of her.

Both parties called independent witnesses to support their positions. Constance Marie Rafailedes, a professional counselor, began counseling J.A.S. in 2003. She testified that J.A.S. was suffering from anxiety because he did not want to visit Stone. She reported Stone to Child Protective Services for physical abuse after J.A.S. claimed that he was spanked and punched. She said that J.A.S. wanted to stay with Brock, and she felt that it would be in J.A.S.'s best interest for Brock to remain the primary conservator.

Judy Fowler is a child and family therapist. In 2003, she was ordered to supervise Stone's visits with J.A.S. and to provide Brock and Stone with parental consultation. She testified that, at first, J.A.S. was anxious about seeing Stone. She stated that this anxiety was caused by an estrangement after Stone had been unable to locate Brock and J.A.S. for several months. However, Stone and J.A.S. soon regained a loving and comfortable relationship. Fowler remembered one incident in 2004 in which Stone spanked J.A.S. with a paddle. She counseled with Stone, and he agreed not to do that again. Fowler also remembered an incident in which J.A.S. complained about being hit by Julie Stone's nephew. Fowler met with the two boys

3

and resolved the matter to her satisfaction. Fowler said that, at some point in time, Brock had been trying to drive a wedge in the relationship between Stone and J.A.S. Fowler testified that she would not have any reservation about designating either parent primary conservator.

Several witnesses testified that Brock was a good mother to J.A.S. A number of residents from Mineral Wells testified as to Stone's good character and described him as a good father to J.A.S. and his other children.

The trial court found that Stone was in arrears on his child support payments but that it was not contemptable. The trial court also granted Stone's petition to modify the parent-child relationship and gave him the exclusive right to establish J.A.S.'s residence.

## II. *Issues*

Brock challenges the trial court's order with two issues. First, Brock argues that the trial court abused its discretion by admitting photographs into evidence without proper authentication. Second, she contends that the trial court abused its discretion when it found that Stone's requested modification was in the best interest of J.A.S.

## III. *Authentication of the Photographs*

Brock contends that the trial court abused its discretion by admitting into evidence photographs Stewart testified were of her and were posted on an adult website, adultfriendfinder.com. Specifically, she contends that Stone did not properly authenticate the photographs as he provided no evidence that they were ever posted on the website.

The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. TEX. R. EVID. 901(a). Testimony that a photograph is what it purports to be is sufficient to authenticate the photograph, while the accuracy of that testimony is a question for the factfinder. *See* TEX. R. EVID. 901(b); *Davidson v. Great Nat'l Life Ins. Co.*, 737 S.W.2d 312, 314-15 (Tex. 1987). We review a trial court's decision to admit evidence for an abuse of discretion. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995).

Stone argues that Brock failed to preserve this issue because she did not object at trial to the lack of evidence that the photos were posted on adultfriendfinder.com. *See* TEX. R. EVID. 103(a)(1). When Stone offered the photographs, Brock made the following objection:

> [BROCK'S COUNSEL]: I will object. I don't think they're properly authenticated. He certainly hasn't identified that he took the pictures, that they

4

are -- truly and accurately represent what they appear to represent. None of the photos have a picture of a face in them at all.

THE COURT: I haven't seen them.

[BROCK'S COUNSEL]: I know you haven't, but I -- Mr. Stewart, do any of these pictures have a full shot of a someone's face in them?

. . . .

THE WITNESS: No.

THE COURT: How do you know they're her?

THE WITNESS: Tell by looking at her body.

THE COURT: Okay.

THE WITNESS: Part of the jewelry she's wearing she had when we were married.

THE COURT: Okay. I'll admit them.

The photos show only the lower portion of the subject's face. Brock's complaint fairly advised the court of her concern that the photos were not of her. Brock did not, however, complain that, even if they were of her, Stone had not proven that the pictures were posted on adultfriendfinder.com. Brock argues, nonetheless, that her objection was sufficient to challenge not only the authentication of the pictures as being of her but also their authentication as pictures that were posted on an adult website. We disagree. A party may not enlarge a ground of error or an argument to include a claim not raised before the trial court. *In re E.A.C.*, 162 S.W.3d 438, 445 (Tex. App.—Dallas 2005, no pet.). Brock challenged the accuracy of the photos, and Stewart responded. Stewart explained how he became aware of the photos, and he was prepared to explain how he knew Brock had accessed his computer. However, he was not called upon to do so because Brock's objection was limited to identification. Brock cannot complain now that the trial court abused its discretion by not granting an objection it was not presented with or by not requiring additional authentication evidence to answer a challenge she did not raise. The trial court had sufficient evidence upon which to conclude that Brock was the subject in the

5

photographs and, therefore, did not abuse its discretion by admitting them. Issue One is overruled.

## IV. *Best Interest of J.A.S.*

Brock next contends that the trial court abused its discretion when it found that Stone's requested modification was in the best interest of J.A.S. In her reply brief, Brock also argues that there was insufficient evidence that the circumstances of the child, the conservator, or another party affected by the order have materially and substantially changed. Because this latter issue was not raised in her original brief, it has been waived. TEX. R. APP. P. 38.3.

We review a trial court's decision on custody, control, possession, and visitation matters for abuse of discretion, and we reverse the trial court's order only if we determine from reviewing the record as a whole that the trial court abused its discretion. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982). A trial court abuses its discretion only if it acts arbitrarily or unreasonably, without reference to any guiding rules or principles. *Owens-Corning Fiberglass Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998).

Under an abuse of discretion standard, legal and factual sufficiency challenges to the evidence are not independent grounds of error but are relevant factors in assessing whether the trial court abused its discretion. *Child v. Leverton*, 210 S.W.3d 694, 696 (Tex. App.—Eastland 2006, no pet.). Because we apply an abuse of discretion standard to a modification suit, the traditional sufficiency standards of review overlap the abuse of discretion standard, and appellate courts apply a hybrid analysis. *Echols v. Olivarez*, 85 S.W.3d 475, 476 (Tex. App.—Austin 2002, no pet.); *In re D.S.*, 76 S.W.3d 512, 516 (Tex. App.—Houston [14th Dist.] 2002, no pet.). Once it has been determined that the abuse of discretion standard applies, an appellate court engages in a two-pronged inquiry: (1) whether the trial court had sufficient information on which to exercise its discretion and (2) whether the trial court erred in its application of discretion. *Child*, 210 S.W.3d at 696. The traditional sufficiency review comes into play with regard to the first question; however, the inquiry does not end there. *Id*. The appellate court then proceeds to determine whether, based on the evidence, the trial court made a reasonable decision. *Id*.

In a legal sufficiency review, we view the evidence in a light favorable to the finding, crediting favorable evidence if a reasonable factfinder could do so and disregarding contrary evidence unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827

(Tex. 2005). The evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the verdict under review. *Id*. at 827-28. We may sustain a no-evidence challenge only when (1) the record discloses a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the only evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *Id*. at 810. In reviewing the factual sufficiency of the evidence, we examine all of the evidence and set aside a finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

The best interest of the child is the primary consideration in determining issues of conservatorship. TEX. FAM. CODE ANN. § 153.002 (Vernon 2008); *In re V.L.K.*, 24 S.W.3d 338, 342 (Tex. 2000). Because the trial court faces the parties, observes their demeanor, and has an opportunity to evaluate the claims made by each parent, the trial court has wide latitude in determining the child's best interest. *Gillespie*, 644 S.W.2d at 451; *Martinez v. Molinar*, 953 S.W.2d 399, 403 (Tex. App.—El Paso 1997, no writ). When addressing conservatorship issues, courts may use the nonexhaustive list of *Holley* factors to determine the child's best interest. *See Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). The *Holley* factors include the following: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) parental abilities of the individuals involved; (5) programs available to those individuals to promote the best interest of the child; (6) plans for the child by these individuals; (7) stability of the home or proposed placement; (8) acts or omissions of the parent that may indicate that the existing parent-child relationship is not proper; and (9) any excuse for the acts or omissions of the parent. *Holley*, 544 S.W.2d at 371-72.

We have previously summarized the key evidence developed during the trial. Brock highlights the evidence favoring her selection as primary conservator, and she challenges the trial court's consideration of the provocative photographs Stewart produced. Brock argues that a parent's sexual conduct is irrelevant to a best interest determination absent proof that the child was aware of the conduct, and she relies upon decisions such as *Wolfe v. Wolfe*, 918 S.W.2d 533, 540 (Tex. App.—El Paso 1996, writ den'd), for this proposition. Because there was no showing that J.A.S. was aware of the photographs, Brock contends that they are irrelevant.

7

We agree with the analysis in *Wolfe* but do not agree that it precludes consideration of the photographs. In *Wolfe*, the wife wanted to introduce several exhibits, including a strap-on, artificial penis; two vibrators; a vibrator-like device called a "tiger-paw"; a videotape of the husband and his paramour engaging in sexual intercourse; still pictures from that videotape; and several magazines containing explicit pornography or promoting sexual promiscuity. The wife argued that they were relevant to his sexual practices. *Id*. at 538-39. The trial excluded the exhibits on the grounds of relevance and unfair prejudice. The trial court did, however, allow counsel to question the witnesses about the items. The husband admitted purchasing the magazines and vibrators, making the video, and having an adulterous affair. The wife was allowed to testify about his sexual misconduct. *Id.* at 539-40. The El Paso Court affirmed and noted that the physical objects could lead to a decision on an improper or emotional basis by the jury and that there was no harm because of the oral testimony concerning each of the physical items. *Id*. at 540. *Wolfe*, therefore, does not stand for the proposition that any sexually related evidence must have been seen by the child before it becomes relevant. Instead, trial courts must carefully consider relevance and weigh the probative value of potentially inflammatory evidence.

There was no evidence that J.A.S. had seen or was otherwise aware of any of the photos. But the fact that someone would post photographs like these of oneself on an internet website has some relevance because it bears upon their character. The trial court could, therefore, consider the photographs when making its best interest determination.

Moreover, even beyond the evidence of sexual misconduct, there was sufficient evidence to support the trial court's best interest finding. The trial court could reasonably have found that Brock had filed fraudulent tax returns, had stolen money from Stewart, had falsely acquired credit cards in his name and then used those for her own benefit, had fraudulently filed a name change petition, had moved numerous times in the last few years, and had attempted to alienate J.A.S. from Stone. If so, this would necessarily imply that the trial court also found her testimony under oath was unreliable. The trial court could, thus, have reasonably concluded that Brock's life displayed a troubling pattern of fraudulent and dishonest behavior. While there was evidence contrary to the trial court's best interest finding, weighing that evidence requires a credibility determination that we must defer to the trial court. We cannot say that the trial court's best interest finding was so against the overwhelming weight of the evidence as to be clearly

8

wrong or unjust. The trial court did not abuse its discretion by finding that Stone's requested modification was in the best interest of J.A.S. Brock's second issue is overruled.

## V. *Conclusion*

The order of the trial court is affirmed.


RICK STRANGE

JUSTICE


January 13, 2011

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.